668 A.2d 1176

**In the Interest of J.J.**

**Appeal of J.J.**

Superior Court of Pennsylvania.

Submitted Jan. 11, 1993.

Filed Dec. 5, 1995.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Kathy L. Echternach, Assistant District Attorney, Philadelphia, for Com., appellee.

Before OLSZEWSKI, TAMILIA and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the dispositional order of the juvenile court which adjudicated appellant delinquent and committed him to a juvenile detention facility.

Appellant presents the following issues for our review: (1) whether this court should exercise its discretion to review the merits of his claims despite the fact that he escaped from custody and was a fugitive for a brief period during the pendency of this appeal; (2) whether the juvenile court erred in refusing to suppress the evidence seized from appellant's person following his arrest and; (3) whether the juvenile court erred in refusing to suppress cocaine which appellant had abandoned in the doorway of a residence. For the reasons set forth below, we affirm.

Before addressing appellant's claims, it is necessary to recount the pertinent facts giving rise to this appeal. On the morning of January 3, 1992, Officer John Gorman was dispatched to the intersection of Hollywood and Jefferson streets to investigate a report of a young black male selling narcotics. When he arrived, the officer saw appellant, J.J., standing on the northeast corner. Officer Gorman, who was in a marked police vehicle, did not activate his lights or direct any other action towards appellant. Upon seeing the officer, appellant quickly walked up the steps of a nearby residence, opened the storm door and dropped a clear plastic bag inside. Believing that the bag contained narcotics, Officer Gorman exited his vehicle, detained appellant and retrieved the bag. Examination of the bag revealed that it contained forty-nine capped vials inside of which was a white chunky substance.[1] As a result of his discovery, Officer Gorman placed appellant under arrest and searched his person. During the body search, Officer Gorman found appellant to be in possession of $83.00 in currency. Appellant, who was a juvenile at the time, was thereafter charged with various offenses arising out of this incident.

Appellant filed a motion to suppress the cocaine and money seized by the police. This motion was denied. Following a hearing on March 13, 1992, appellant was adjudicated delinquent based on his possession[2] and possession with the intent to deliver[3] a schedule II controlled substance, i.e., cocaine.[4] The juvenile court thereafter entered a dispositional order committing appellant to St. Gabriel's Hall. Appellant filed a timely appeal therefrom.

On July 19, 1992, appellant escaped from St. Gabriel's Hall and a bench warrant was issued for his arrest. Approximately one month later, appellant was apprehended while driving a

1. The substance was later tested and found to be cocaine. The vials contained a total of 4.9 grams of cocaine.

2. 35 P.S. § 780–113(a)(16).

3. 35 P.S. § 780–113(a)(30).

4. 35 P.S. § 780–104(2)(i)4 (defining cocaine as a schedule II controlled substance).

stolen car. As a result of the charges arising from this latter incident, appellant was adjudicated delinquent and committed to the Glen Mills School.[5]

In September of 1992, the Commonwealth filed a motion to quash the appeal due to appellant's former fugitive status. This court granted the motion by *per curiam* order entered on January 20, 1993. Appellant filed a petition for allowance of appeal with our Supreme Court, which granted allocatur. The Court subsequently vacated our order and remanded this matter so that we may determine whether in the exercise of our inherent discretion the appeal should be quashed because of appellant's previous escape. *In the Interest of J.J.*, 540 Pa. 274, 289–291, 656 A.2d 1355, 1363 (1995).

The Supreme Court has not elaborated on the manner in which this discretionary authority is to be exercised. However, we are not wholly bereft of instruction, as a few guiding principles may be gleaned from the Supreme Court's discussions on this subject. In applying the discretionary rule, the Court has repeatedly emphasized that the courts of inferior jurisdiction have the inherent discretion to determine whether any sanction should be imposed in view of the particular circumstances and the effect of the flight on the court's ability to dispose of the case. *See, e.g., Commonwealth v. Huff*, 540 Pa. 535, 536–539, 658 A.2d 1340, 1341–1342 (1995) (it is not proper for an appellate court to dismiss an appeal where the trial court chooses to ignore disrespect manifested by the defendant's flight and disposes of the issues on their merits; because flight prior to sentencing had no significant effect on the appellate process, the Superior Court erred by holding that the defendant waived his appellate rights, including the right to seek collateral relief); *In the Interest of J.J.*, 540 Pa. at 287–291, 656 A.2d at 1362–1363 (appellate court can exercise the same discretion as a trial court in deciding what will be the appropriate response to a defendant's fugitive status occurring during an appeal pending before its own court; the

---

**5.** The offenses relating to appellant's theft and unauthorized use of the automobile are not properly before us for review at this time. Accordingly, this incident will not be further discussed.

appellate courts thus have the right to fashion an appropriate response, including the dismissal of the matters which the defendant seeks to have reviewed); *Commonwealth v. Rhodes,* 538 Pa. 73, 74, 645 A.2d 1294, 1294 (1994) (trial court was in a position to assess what penalty, if any, should be imposed where the defendant was a fugitive during post-trial proceedings; since the trial court chose to overlook the defendant's contemptuous flight and disposed of his post-trial motions, the defendant was entitled to proceed with his appeal in the Superior Court). Review of the exercise of this discretion is limited, as the appellate courts will only examine: (1) the connection between the defendant's flight and the court's ability to dispose of the defendant's case; and (2) whether the sanction imposed in response to the flight is reasonable under the circumstances. *In the Interest of J.J.,* 540 Pa. at 287–291, 656 A.2d at 1362–1363; *Commonwealth v. Kindler,* 536 Pa. 228, 233, 639 A.2d 1, 3 (opinion announcing the judgment of the court, by Papadakos, J.), *cert. denied,* —— U.S. ——, 115 S.Ct. 327, 130 L.Ed.2d 287 (1994).

■ Examination of the above authorities persuades us that the Supreme Court did not advocate the adoption of a *per se* rule mandating forfeiture where a defendant's flight disrupts the appellate process. Nor did the Supreme Court limit the scope of the issues to be reviewed in dealing with a fugitive defendant. Instead, the Supreme Court has consistently recognized the inherent power of the courts to decide whether any sanction should be imposed, subject only to the requirements that the defendant's fugitive status must affect the court's ability to dispose of the case and that any sanction must constitute a reasonable response to the flight. *In the Interest of J.J.* and *Commonwealth v. Kindler, supra.* To exercise discretion in accordance with these directives, the courts must necessarily conduct a case-by-case analysis of the pertinent facts and circumstances. While the factors to be considered have not been specifically articulated, the Supreme Court has indicated that the connection between the flight and the court's ability to dispose of the case is relevant. *In the Interest of J.J.,* 540 Pa. at 289–291, 656 A.2d at 1363; *Com-*

*monwealth v. Kindler,* 536 Pa. at 233, 639 A.2d at 3. The Court has also provided that the court's response to the flight must be reasonable. *In the Interest of J.J.,* 540 Pa. at 289–291, 656 A.2d at 1363; *Commonwealth v. Kindler,* 536 Pa. at 233, 639 A.2d at 3.

■ Consequently, the matters to be reviewed in determining whether a defendant should be sanctioned for his flight should bear directly on these two primary issues and may include, but are not limited to: (1) the stage of the proceedings when the flight occurred, *i.e.,* during the trial, post-trial or on appeal; (2) the manner in which the defendant escaped; (3) whether the defendant has been returned to custody; (4) the circumstances surrounding the defendant's return to custody, *i.e.,* was the return voluntary or was the defendant captured in the course of committing another crime; (5) the length of time that the defendant remained at large; (6) the age/maturity/condition of the defendant, *i.e.,* whether he is a juvenile or adult and whether he is capable of fully comprehending the significance of his conduct; (7) the reasons for the defendant's flight, *i.e.,* whether the escape resulted from a mere juvenile whim, homesickness, desire to prove his innocence or whether it was a deliberate intent to flout the authority of the court; and (8) the effect which the defendant's flight had upon the court's ability to engage in effective and meaningful review of the defendant's claims. Of course, these factors are intended as an aid to the courts and should not be construed as an attempt to limit the matters for consideration. Any other relevant factors pertaining to the defendant's flight and the severity of the sanction to be imposed should thus be examined.

Review of the above considerations persuades us that dismissal of the appeal, while arguably justified, should not be imposed in this case. The record indicates that appellant, who has a history of delinquency adjudications, was adjudicated delinquent in the instant case and committed to Saint Gabriel's Hall. Following entry of the dispositional order, appellant timely appealed to this court. A few months later, appellant

absconded and a bench warrant was issued for his arrest.[6] Appellant remained at large for approximately one month at which time he was apprehended while operating a stolen car.

Appellant's behavior evinces his rejection of the rehabilitative opportunities provided by the juvenile court and desire to continue his life of crime. Appellant's flight and perpetration of additional offenses further demonstrate his utter contempt for the judicial system and lack of respect for the laws of this Commonwealth. Nevertheless, appellant was returned to custody, albeit fortuitously rather than voluntarily, within a month after his escape. In fact, appellant was back in custody well before the Commonwealth had even filed its motion to quash this appeal. Aside from the Commonwealth's motion, nothing in the record indicates that appellant's escape has disrupted the appellate process. Nor has the relatively brief period of flight substantially compromised this court's ability to engage in effective and meaningful review of the questions presented by appellant. The impact on the appellate process, if any, was therefore minimal.[7] We are also mindful of the fact that despite his criminal conduct, appellant was still a juvenile at the time of his escape. Due to his status as a juvenile, the fact that he has been returned to custody and because the escape had virtually no effect on our ability to address his claims, we will exercise our inherent discretion and decline to quash the appeal.[8]

6. The record does not contain any information concerning the circumstances surrounding appellant's escape.

7. The Commonwealth urges us to hold appellant accountable for all of the resources expended by the appellate courts in connection with his appeals. We are not persuaded by the Commonwealth's reasoning. This court initially quashed the appeal based on the authorities which were in effect at the time. Appellant could not have foreseen that the Supreme Court would grant his petition for allowance of appeal and overrule caselaw which was of relatively recent vintage. We accordingly believe that the prior appeals to this court and the Supreme Court should not be weighed against appellant in examining the effect of his escape on the appellate process.

8. The dissent criticizes our decision to permit this appeal and charges that, in doing so, we have overwhelmingly focused on the lack of disruption to the appellate process. Dissenting Opinion, *post* at 269–270 and 271–272. Contrary to the dissent's assessment, our decision is

■ Having disposed of this threshold question, we will proceed to address the merits of appellant's remaining claims.[9] Appellant's second and third issues challenge the lower court's refusal to suppress the physical evidence seized by the police. In reviewing a suppression court's ruling:

> we must determine whether the record supports that court's factual findings. In so doing, we consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Hughes,* 536 Pa. 355, 366–367, 639 A.2d 763, 769 (1994) (citation omitted). We will evaluate appellant's arguments and the decision of the lower court in accordance with these principles.

Appellant contends that the cocaine retrieved from the doorway must be suppressed because it was seized without a

based on a review of all of the particular circumstances of this case, including the fact that appellant is a juvenile. We have therefore exercised our discretion to excuse his adolescent and immature behavior notwithstanding the fact that the escape constitutes an affront to the dignity of the court. However, we emphasize that our decision to disregard appellant's flight should not be interpreted as an expression of approval or condonation of such behavior. Appellant and others who contemplate similar conduct are thus forewarned that this court will not hesitate to impose the ultimate sanction of dismissal in the appropriate case.

9. The dissent would not reach the merits of these issues because they do not implicate the truth-determining process. Dissenting Opinion, *post* at 273–274. Although not labeled as such, the dissent's "truth-determining" standard appears to be derived from the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541–§ 9546. The PCRA was designed to afford collateral relief to those individuals who are convicted of a crime. 42 Pa.C.S.A. § 9542. It thus has no application in the context of claims raised on direct appeal. Moreover, application of such a standard would be particularly inappropriate here because post-conviction relief does not extend to juvenile matters. *See, e.g., Matter of J.P.,* 393 Pa.Super. 1, 11, 573 A.2d 1057, 1062 (1990). Regardless of the basis for the dissent's derivation of the truth-determining standard, appellant's suppression claims do appear to implicate the truth-determining process since the remedy would be to grant him a new adjudication in the event these issues are deemed to be meritorious.

warrant. Appellant also argues that the currency taken from his person must be suppressed because it was the fruit of an unlawful arrest. We disagree with appellant's assessment.

The record reveals that Officer Gorman was dispatched to the intersection of Hollywood and Jefferson to investigate a report of a black male who was selling narcotics. Suppression Hearing Transcript (S.H.T.) 3/10/92 at 4–5 and 10. Officer Gorman observed appellant standing on the street corner when he arrived a few minutes later. *Id.* at 6. Officer Gorman did not activate his lights or otherwise call attention to his presence. *Id.* at 13–14. Nor did he take any action signifying an interest in appellant. *Id.* at 6–7 and 13–14. Upon seeing the officer, appellant turned and walked quickly up to the residence located at 1503 Hollywood Street. *Id.* at 5–6 and 18–19. Appellant then opened the storm door of the house and dropped a clear plastic bag inside the doorway. *Id.* at 5, 7 and 13. Although he did not observe the contents of the bag, Officer Gorman believed that it contained narcotics based on his experience and participation in prior drug-related arrests in the area. *Id.* at 5–8. After watching appellant drop the bag, Officer Gorman detained appellant and retrieved the bag from the doorway. *Id.* at 5, 6–7 and 16. After the cocaine was discovered, appellant was arrested and searched. *Id.* at 5 and 16. During the search of appellant's person, Officer Gorman recovered the $83.00 in currency. *Id.* at 5 and 16.

■ Even were we to assume, *arguendo*, that Officer Gorman's initial detention of appellant was unlawful, suppression of the evidence is not an appropriate remedy. Appellant cannot legitimately contest the seizure of the cocaine recovered from 1503 Hollywood Street because he did not establish either that he owned the premises or that he otherwise held a legitimate and reasonable privacy interest therein. *See Commonwealth v. Peterson*, 535 Pa. 492, 497–501, 636 A.2d 615, 617–619 (1993) (it is the defendant's responsibility to establish that his suppression challenge is legitimate by demonstrating that he held a reasonable privacy interest in the premises which is constitutionally justifiable). Moreover, appellant

lacks standing to challenge the seizure of the cocaine because he voluntarily abandoned it before Officer Gorman took any action against him. *Commonwealth v. Tillman,* 423 Pa.Super. 343, 346, 621 A.2d 148, 150 (1993). Since the cocaine was obtained independently of any police misconduct, it need not be suppressed. *See id.,* 423 Pa.Super. at 347–348, 621 A.2d at 150–151 (drugs were obtained independently of any police misconduct where they were abandoned by the defendant before the police initiated any contact with him; suppression of the evidence was not required).

■ Once Officer Gorman retrieved the abandoned bag and discovered that it contained a controlled substance, he clearly had probable cause to arrest appellant. *See Commonwealth v. Burnside,* 425 Pa.Super. 425, 430, 625 A.2d 678, 681 (1993) (probable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime). After effectuating a lawful arrest, Officer Gorman was then permitted to conduct a search of appellant's person without a warrant. *Commonwealth v. Agnew,* 411 Pa.Super. 63, 74, 600 A.2d 1265, 1271 (1991). The currency taken from appellant's person was therefore admissible since it was obtained during the search incident to a lawful arrest. Finding that the trial judge properly denied appellant's suppression motion, we affirm.

Order affirmed.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting:

In this case, the majority concludes that we should exercise our discretion to hear the merits of J.J.'s appeal. In doing so, the majority focuses overwhelmingly on the lack of disruption to the appellate process, and minimizes what the majority concedes was J.J.'s "contemptuous behavior." Majority opinion at 265–270. Because I disagree with this analysis which

essentially ignores J.J.'s "contemptuous behavior," I must respectfully dissent.

After J.J. was adjudicated delinquent for possessing while intending to deliver a controlled substance, he filed a direct appeal to this Court. While this appeal was pending, J.J. escaped from St. Gabriel's Hall, the juvenile facility where he had been committed. J.J. remained at large for about a month until police captured him; he was driving a stolen car. After J.J.'s return to custody, the Commonwealth asked us to quash his appeal. Because the appellate forfeiture rule required it, we quashed the appeal in a per curiam order. *See Commonwealth v. Jones*, 530 Pa. 536, 540, 610 A.2d 439, 441 (1992) (once post-trial proceedings commence, defendant's voluntary escape acts as a *per se* and irrevocable forfeiture of his right to appeal).

Our Supreme Court granted allocatur and overruled the mandatory application of appellate forfeiture as articulated in *Jones*. It traced the appellate forfeiture rule's evolution in this Commonwealth, and reconsidered its underlying purposes. When a convicted defendant escapes and remains at large, we may properly refuse to hear his appeal; by escaping, the defendant has placed himself beyond the court's jurisdiction and control, and may not be responsive to its judgments. *In the Interest of J.J.*, 540 Pa. 274, 276–277, 656 A.2d 1355, 1356 (1995) (citing *Commonwealth v. Galloway*, 460 Pa. 309, 311–12, 333 A.2d 741, 743 (1975)). This consideration no longer applies when the fugitive has been returned to custody.

Caselaw provides two other reasons for quashing the appeal of a returned fugitive: because the escape disrupts the appellate process, or constitutes an affront to the appellate court's dignity. Our high court reaffirmed these reasons for the appellate forfeiture rule, but held that forfeiture should be discretionary, not mandatory:

> [A]n appellate court should retain the discretion to consider and to reinstate the appeal of a fugitive upon his return to custody. We trust that the judicious exercise of this authority will insure that the functioning of the appellate process

will not be impeded and the dignity of the courts will be guarded. This approach will permit the court to protect the appellate process while considering the interest of a defendant in pursuing his appeal.

*Id.,* 540 Pa. at 288, 656 A.2d at 1362. The Supreme Court remanded to allow us to consider the equities of J.J.'s case, and exercise our discretion as to whether we should entertain his appeal. *Id.* at 289–291, 656 A.2d at 1363. How to exercise this discretion is a matter of first impression for the Superior Court.

For guidance, our Supreme Court has referred us to its recent analysis in *Commonwealth v. Kindler,* 536 Pa. 228, 639 A.2d 1, *cert. denied,* —— U.S. ——, 115 S.Ct. 327, 130 L.Ed.2d 287 (1994). *Kindler* noted that federal precedent approves of the principle underlying appellate forfeiture—that "one who invokes the jurisdiction of a tribunal and then flees has voluntarily waived or disentitled himself to call upon the resources of the Court for a determination of his claims." *Id.* at 228, 639 A.2d at 3 (citing *Molinaro v. New Jersey,* 396 U.S. 365, 366, 90 S.Ct. 498, 498–99, 24 L.Ed.2d 586, 587–88 (1970)). The *Kindler* Court chose to adopt the narrower federal application of this principle, whereby only that court whose dignity is affronted by a defendant's escape may sanction the defendant for the escape. *Id.* (citing *Ortega–Rodriguez v. United States,* 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993)); *see also Commonwealth v. Huff,* 540 Pa. 535, 658 A.2d 1340 (1995).

The language of *Kindler* does not specify how a court must respond to an escape. Rather, a court has "every right to fashion an appropriate response," so long as "the sanction imposed in response to the flight is reasonable under the circumstances." *Kindler, supra.* Hence, a defendant who flees during post-trial motions may expect to have the trial court deny those motions; likewise, the customary sanction for an escape during the pendency of an appeal is to quash the appeal. *Id.* (citing *Ortega–Rodriguez*'s description of dismissing the appeal as a "reasonable response").

I agree with the majority that whether we exercise our discretion to hear or quash a fugitive appeal necessarily depends on a case by case analysis. I also agree that there are a number of relevant factors for a court to consider. I disagree, however, with the majority's undue reliance on the factor relating to the disruption of the appellate process. As noted in *J.J.*, the exercise of our discretion in these matters is intended to "ensure that the functioning of the appellate process will not be impeded and that the dignity of the courts will be guarded." 540 Pa. at 287–289, 656 A.2d at 1362. Thus, a disruption, or lack thereof, should not always be dispositive in determining whether we should exercise our discretion to hear a fugitive's appeal. A court should still consider other factors that relate to safeguarding the dignity of the courts. Two factors that are particularly important are the circumstances relating to a defendant's escape and return, and the type of claim sought to be raised on appeal. With these standards in mind, I now turn to the specifics of J.J.'s case.

At the outset, I must agree with the majority that J.J.'s escape did nothing to disrupt the appellate process. J.J. had escaped and was returned to custody before the Commonwealth even asked us to quash his appeal. The Commonwealth points out that J.J.'s flight and recapture have injected claims into his appeal other than those he originally raised, and has delayed our disposition to the point where he is almost 18 years old and no longer a juvenile. Commonwealth's letter brief at 7–8. But it is not J.J.'s fault that our Supreme Court chose his appeal as the vehicle for revising the appellate forfeiture rule, so we cannot hold the resulting delay against him. Hence, I agree that quashal is not justified for this reason.

J.J.'s attitude toward our criminal justice system is a different matter, though. This Commonwealth, like every state in our country, goes to great lengths and expense in order to provide its citizens the best criminal justice system in the world. No other society would afford J.J. the same degree of protection for his rights and liberties. J.J. was caught red-handed with illegal drugs. Our system afforded him counsel,

a hearing to argue that his arrest and seizure of the drugs violated his constitutional rights, and a full trial where the Commonwealth had to prove every element of the crime charged beyond a reasonable doubt. Then our system afforded him a right to appeal, where he could again challenge the evidence against him and raise his constitutional claims.

Despite these myriad protections, J.J. chose to thumb his nose at the system. Rather than wait for his appeal, where his state-supplied counsel could again try to vindicate his rights, J.J. chose to escape and commit more crimes. He was recaptured one month later, driving a stolen car and possessing stolen property. J.J. has repeatedly shown us what he thinks of the system, and I am hesitant to allow him to continue enjoying the benefits and procedural safeguards of an unparalleled criminal justice system just because he was lucky enough to be recaptured.[1] Therefore, the circumstances of J.J.'s escape and recapture militate against allowing this appeal.

This factor, relating to the circumstances of escape and return, will not always be dispositive, however. We must also consider the type of claim that a former fugitive seeks to raise on appeal. If an innocent individual escaped during the pendency of his appeal in order to exonerate himself,[2] it would be mean-spirited indeed to ignore his claims of innocence because we felt our dignity was offended by the escape. The purpose animating any civilized justice system is the accurate determination of guilt; the procedures we employ must always give due consideration to the possibility of a defendant's innocence. While it is fitting that a fugitive not be permitted to use our criminal justice system's extensive safeguards to

---

1.  I note that J.J.'s escape can scarcely be characterized as the impulsive act of a child, brought on by homesickness. A mere glance at J.J.'s prior juvenile record and capture in the course of further criminal conduct satisfies us that his escape was not a mere childish whim If anything, J.J.'s status as juvenile strongly weighs against our entertaining this appeal. *See In the Interest of K.B.,* 432 Pa.Super. 586, 589–603, 639 A.2d 798, 800–07 (1994), *appeal denied,* 540 Pa. 613, 656 A.2d 118 (1995).

2.  Harrison Ford's recent film *The Fugitive* comes to mind.

"beat the system" which he has flouted by escaping, we should never tolerate the conviction of an innocent person. Any concern we might have for upholding the court's dignity pales in comparison to the dignity we lose when the system permits such a miscarriage of justice. Therefore, a claim that implicates the truth-determining process will weigh in favor of overlooking the affront caused by escape.

In the instant case, J.J. concedes that he was caught with drugs; he only challenges the trial court's decision not to apply the exclusionary rule to suppress the evidence of his crime. As its critics have often noted, the exclusionary rule thwarts the truth-determining process by suppressing relevant evidence. We utilize exclusion because it is the best way to vindicate our citizens' constitutional rights, *see Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) (exclusionary rule's purpose is to protect the constitutional expectation of privacy, not just to deter police misconduct); but we do not pretend that the exclusion of relevant evidence aids in the search for the truth.

While denying review of a constitutional claim is no small matter, "respect for judicial process is a small price to pay for the civilizing hand of the law, which alone can give meaning to constitutional freedom." *Walker v. Birmingham*, 388 U.S. 307, 321, 87 S.Ct. 1824, 1832, 18 L.Ed.2d 1210, 1220 (1967). If J.J. and others like him would enjoy our broad constitutional protections, they should not show contempt for lawful judicial process by escaping from custody during the pendency of their appeals.

As the circumstances of J.J.'s escape and recapture affront the dignity of this Court, and the types of claims raised for review do not implicate the truth-determining process, I would exercise our discretion not to entertain this appeal.