COMMONWEALTH of Pennsylvania,
Appellant,

v.

Samuel PIZARRO, Appellee.

Superior Court of Pennsylvania.

Submitted Oct. 21, 1998.
Filed Dec. 10, 1998.

Catherine Marshall, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Ronald F. Kidd, Jr., Philadelphia, for appellee.

Before POPOVICH and HUDOCK, JJ., and CERCONE, President Judge Emertitus.

POPOVICH, J.:

The Commonwealth appeals from the order entered on September 17, 1997, by the Court of Common Pleas of Philadelphia County, which granted Appellee Pizarro's motion to suppress ten packets of phencyclidine, more commonly known as PCP. On appeal, the Commonwealth primarily contends that the suppression court erroneously applied the doctrine of forced abandonment to suppress contraband that had been voluntarily abandoned by appellee and then recovered by a police officer. The Commonwealth also contends that the suppression court mischaracterized a brief detention of appellee as an unconstitutional seizure. We agree and, accordingly, reverse and remand for a trial.[1]

When reviewing a Commonwealth's appeal from the grant of a suppression motion, we must consider only the evidence presented by the defendant and so much of

---

**1.** The Commonwealth has certified that the suppression order substantially handicaps or effectively terminates its prosecution of this case. This permits appellate review of the suppression order. *See Commonwealth v. Prosek,* 700 A.2d 1305, 1307 (Pa.Super.1997) (citation omitted).

the evidence for the prosecution which, when read in the context of the record as a whole, remains uncontradicted. *See Commonwealth v. Mendenhall*, 552 Pa. 484, 486, 715 A.2d 1117, 1118 (1998). Where the evidence supports the suppression court's findings of fact, this Court may reverse only if the legal conclusions drawn therefrom are erroneous. *See id.*

We find that the suppression court's factual findings are supported by the record and are as follows:[2] On July 20, 1995, Officers Brian King and Joseph Murray conducted a routine patrol in the Hunting Park section of Northern Philadelphia. Traveling in a white Ford Explorer embossed with a police logo, the officers slowly drove southward along Tenth Street and then turned left on Butler Street. Officer King observed appellee and a second man, later identified as co-defendant Rivera, standing on the northwest corner of Ninth and Butler Streets, and a white Buick automobile idling in the driving lane of Butler Street. Rivera approached the driver's side of the Buick and briefly engaged the driver in conversation. He accepted U.S. currency from the driver, approached appellee and handed him the currency. Appellee then ran to one of the corner properties (a doctor's office), retrieved certain items from a brown paper bag, returned to Rivera and handed him the items. Rivera, in turn, delivered the items to the driver of the Buick. The Buick departed, turning north onto Ninth Street.[3]

Officers King and Murray, believing they had just witnessed a drug transaction, prepared to approach appellee and Rivera. At that time, a second marked police vehicle arrived on the scene. The operator of this cruiser was conducting an unrelated, routine patrol. Rivera turned and spotted the cruiser, but he and appellee did not notice Officers King and Murray. Immediately, he and appellee fled eastward, the opposite direction in which the police cruiser was traveling, on Butler Street. Although appellee and Rivera were traveling in the opposite direction, the operator of the cruiser did not turn his car around, activate his headlights or pursue Rivera and appellee in any manner.

After observing the suspects' reaction to the cruiser, Officers King and Murray followed the suspects into a grocery located on the corner of Percy and Butler Streets. Rivera and appellee were at the counter when the officers entered the store. The proprietors of the grocery stood behind the counter and were conversing in Spanish. Officer Murray requested that Rivera and appellee step away from the counter. Although appellee complied with Officer Murray's request, Rivera attempted to exit the store. When stopped, Rivera became unruly and physically resisted Officer Murray. The officer then forced Rivera to kneel on the floor. Officer King testified that at this time, neither appellee nor Rivera was free to leave the grocery.

Officer King assisted Officer Murray in securing Rivera and then left to retrieve the brown paper bag appellee left near the scene of the transaction. He returned to the corner of Ninth and Butler Streets and immediately spotted the bag on the lawn. Officer King opened the bag and examined its contents. A layer of tin foil was loosely folded over the contents of the bag. Ten brown-

---

**2.** The suppression court declined to file an opinion in support of its order. *See* Pa. R.A.P.1925. The suppression court did, however, summarize its findings of facts at the end of the suppression hearing. *See* N.T., Suppression Hearing, 9/17/97, at 57–65.

**3.** Officer King actually testified that appellee had removed several rectangular glassine packets, each approximately two inches by an inch and one-half in size, from the brown paper bag and gave these packets to Rivera. The suppression court discredited this testimony in light of the fact that Officer King observed the transaction from a distance of one and one-half blocks and without the aid of binoculars.

Unfortunately, the suppression court's findings with respect to Officer King's observations are ambiguous. At first, the suppression court found that Officer King was unable to identify the packet given to the individual in the Buick. Later, the suppression court implied that the Officer identified the packet but not its contents, "that he just assumed that the packet contained a controlled substance." N.T., 9/17/97, at 63.

Proceeding with an abundance of caution, we adopt a conservative posture and presume that Officer King could not identify the glassine packet or its contents but merely witnessed the exchange of an unidentified object.

tinted glassine packets were encased in the foil. Each packet contained a green leafy substance that had been treated with an oily liquid. The distinctive odor of phencyclidine emanated from the packets. Officer King immediately returned to the grocery.

Approximately ten to fifteen seconds elapsed between Officer King's departure and return. Officer King informed Officer Murray of his discovery, and the officers proceeded to arrest appellee and Rivera. Again, Rivera attempted to escape, and a struggle between the officers and Rivera ensued. During the struggle, a fully-loaded derringer handgun fell out of Rivera's pants leg and onto the floor. After securing Rivera and completing the arrest, the officers recovered the handgun. The police found currency when they conducted a search incident to appellee's arrest.

The police subsequently charged appellee with knowing and intentional possession of a controlled substance,[4] possession with intent to deliver,[5] possessing instruments of crime,[6] carrying firearms on public streets in Philadelphia,[7] escape [8] and criminal conspiracy.[9] On September 17, 1997, the Honorable Bernard J. Avellino conducted a hearing on appellee's motion to suppress physical evidence. The suppression court determined that the police had arrested appellee in the absence of probable cause when the police officers entered the corner grocery and detained him. Reasoning that the police forced appellee to abandon the phencyclidine during their illegal seizure, the court then applied the doctrine of forced abandonment. The suppression court found the case of *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995), to be factually identical, and, therefore, granted appellee's motion to suppress the phencyclidine recovered by the police.

The suppression court's blanket application of *Banks* amounts to reversible error. Tim-

ing was pivotal in the case before the suppression court, but the court ignored the sequence of the events that transpired on the evening of appellant's arrest. In *Banks*, our Supreme Court addressed the issue of whether a suspicious transaction, which included the exchange of money for unknown items, combined with the seller's flight upon the approach of a uniformed officer, gives rise to probable cause to seize the individual. Applying the totality of the circumstances test, our Supreme Court determined that the circumstances fell narrowly short of establishing probable cause and, therefore, suppressed the crack cocaine discovered during a search conducted subsequent to the arrest of the seller.

In the present case, the suppression court applied *Banks* without considering whether the causative factor of abandonment was the unlawful and coercive action of the police officers in chasing the defendant in order to seize him. *Compare Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973) (suppression of abandoned evidence necessary where police initiated chase prior to abandonment; causative factor in the abandonment was the unlawful action of police), *with Interest of Evans*, 717 A.2d 542 (Pa.Super.1998) (abandoned evidence properly admitted where defendant abandoned crack cocaine subsequent to police officer exiting from car but prior to officer initiating chase; element of police coercion absent).[10] Consequently, the suppression court misidentified the packets of phencyclidine as fruits of the officers' detention of appellee rather than evidence obtained independently of that detention. Compounding this error, the suppression court misapplied the totality of circumstances test espoused in *Banks* and erroneously concluded that this detention was illegal. In fact, reasonable suspicion justified the police officers' brief detention of appellee and his

---

4.  35 P.S. § 780–113(a)(16).

5.  35 P.S. § 780–113(a)(30).

6.  18 Pa.C.S.A. § 907.

7.  18 Pa.C.S.A. § 6108.

8.  18 Pa.C.S.A. § 5121.

9.  18 Pa.C.S.A. § 903.

10. Although our Supreme Court relied on an abandonment case, *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914, when deciding *Banks*, the Court did not reconsider the abandonment issues raised in *Jeffries*.

cohort while Officer King retrieved the abandoned phencyclidine.

■ Even if we assume, *arguendo*, that the detention of appellee and Rivera was unlawful, suppression of the phencyclidine was improper. For "a defendant accused of a possessory crime to prevail in a challenge to the search and seizure which provided the evidence used against him, he must, as a threshold matter, establish that he has a legally cognizable expectation of privacy" in the place invaded. *Commonwealth v. Carlton*, 549 Pa. 174, 180, 701 A.2d 143, 145–46 (1997). A criminal defendant has no privacy expectation in property that he has voluntarily abandoned or relinquished. *See Commonwealth v. Johnson*, 431 Pa.Super. 291, 636 A.2d 656, 658–59 (Pa.Super.1994), *appeal denied*, 539 Pa. 646, 651 A.2d 534 (1994); *Commonwealth v. Wilson*, 414 Pa.Super. 302, 606 A.2d 1211, 1212–13 (1992), *appeal denied*, 535 Pa. 658, 634 A.2d 221 (1993).

> In considering whether the abandoned or relinquished property is admissible, our supreme court has held that "initial illegality taints the seizure of the evidence ... [because] in such a situation it cannot be said that there was a 'voluntary abandonment or relinquishment' of the evidence.... No improper or unlawful act can be committed by the officers *prior* to the evidence being abandoned [or relinquished]." *Commonwealth v. Shoatz*, 469 Pa. 545, 366 A.2d 1216, 1220 (1976) (citations omitted). *See Commonwealth v. Houston*, 456 Pa.Super. 105, 689 A.2d 935 (1997).

*Commonwealth v. Prosek*, 700 A.2d 1305, 1309 (Pa.Super.1997) (emphasis added).

For appellee's challenge to the seizure of the phencyclidine to succeed he must "meet the threshold requirement of demonstration" of a "legally cognizable expectation of privacy" in the area which was searched. *Commonwealth v. Carlton*, 549 Pa. at 180, 701 A.2d at 145–46. Appellee, however, has failed to establish "either a possessory interest, a legitimate presence or a characteristic of ownership ... from which society could recognize an expectation of privacy." *Id.* at 180, 701 A.2d at 145 (citation omitted); *accord Johnson* 636 A.2d at 658–59; *Common-*

*wealth v. Tillman*, 423 Pa.Super. 343, 621 A.2d 148, 150–51 (1993); *In Interest of J.J.*, 447 Pa.Super. 259, 668 A.2d 1176, 1180–81 (1995).

■ Initially, appellee took precautions to disassociate himself with the contraband in the event of police intervention. Appellee deposited the phencyclidine on the front lawn of a property owned by an unknown third party. He placed the narcotics supply in a location readily accessible to anyone frequenting the corner. · Appellant purposefully placed the supply so that it was not in his immediate possession and then stood approximately 10 to 15 feet away from the bag. Appellee only returned to the bag when transacting a sale. The obvious reason for this arrangement was to enable appellee and Rivera to claim ignorance of the sequestered narcotics supply in the event their illegal activities were discovered by police. Through his conscious effort to disassociate himself from the narcotics supply in the event of police intervention, appellee effectively abandoned any reasonable expectation of privacy in the bag. *See Johnson*, 636 A.2d at 659.

Appellee's subsequent behavior manifested a clear intent to relinquish control of the contents of the bag as well as any expectation of maintaining the privacy of its contents. *See Johnson*, 636 A.2d at 659; *see generally*, *Tillman*, 621 A.2d at 150–51; *Interest of J.J.*, 668 A.2d at 1180–81. When the cruiser drove by, appellee and Rivera fled, abandoning the supply of phencyclidine. Although appellee contends that he was impermissibly forced to abandon the bag by the police, the uncontradicted testimony of Officer King established that the police did nothing to trigger the abandonment. The operator of the cruiser did not follow appellee, nor did he activate his lights. He simply drove onward, continuing his patrol of the vicinity. Officers King and Murray observed all this from their vehicle. They took no action before appellee and Rivera fled from the cruiser.

■ A police cruiser passing through the neighborhood on routine patrol does not amount to police coercion compelling the

abandonment of contraband. *See Commonwealth v. Riley*, 715 A.2d 1131, 1134 (Pa.Super.1998) (mere approach by a law enforcement official does not amount to police coercion requiring suppression of evidence abandoned by defendant); *Interest of Evans*, 717 A.2d at 545; *see also Johnson*, 636 A.2d 656; *Tillman*, 621 A.2d at 150. When the cruiser passed through the neighborhood, appellee and Rivera were not deprived of their freedom in any significant way, nor were they placed in a situation in which they could believe reasonably that their freedom of action was restricted by police conduct. *See Commonwealth v. Matos*, 543 Pa. 449, 451–52, 672 A.2d 769, 770–771 (1996) (a suspect is seized only, when in view of all the circumstances, a reasonable person would have believed he was not free to leave). None of the police officers engaged in activity which could by any stretch of the imagination be understood to be an act of unlawful coercion. It was appellant's fear of detection, as opposed to any threat or show of force by the police, that induced him to flee the scene. Appellee's sensitivity to the risk of police detection does not establish that his abandonment was forced. Hence, we conclude that appellant voluntarily abandoned the phencyclidine, thus relinquishing any expectation of privacy over the contents therein. *See Tillman*, 621 A.2d at 150 (where police officers did not exit their vehicle until after witnessing defendant spy them, toss a container to the ground and walk away, the container was not abandoned as the result of any police coercion); *see also Interest of J.J.*, 668 A.2d 1176; *Shoatz*, 469 Pa. 545, 366 A.2d 1216.

█ The suppression court found that Officers Murray and King lacked justification to detain appellant *at the grocery* and, therefore, suppressed the phencyclidine that Officer King had recovered from the lawn on Ninth and Butler Streets. This conclusion is fundamentally flawed as appellee had abandoned the phencyclidine when he ran from the cruiser before the police officers initiated pursuit. The phencyclidine was not the fruit

of an illegal seizure because it was "seized independently of any unlawful police conduct, i.e., it was abandoned prior to the police showing any interest in appellee." *Tillman*, 621 A.2d at 151 (even if seizure was illegal, evidence was not subject to suppression because it was abandoned prior to the time that police showed any interest in defendant); *accord Interest of J.J.*, 668 at 1181; *see also Shoatz*, 366 A.2d at 1220 (admissibility of abandoned evidence depends upon whether law enforcement officials committed improper or unlawful acts prior to the abandonment of evidence).

█ Moreover, Officers King and Murray possessed the requisite level of suspicion necessary to detain appellee at the grocery. To justify an investigatory stop, the police must have, at its inception, a reasonable suspicion that criminal activity is afoot. *See Riley*, 715 A.2d at 1135. To determine whether reasonable suspicion exists, this court views the totality of the circumstances through the eyes of a trained officer. *Id.* at 1135. While mere presence in a heavy drug-trafficking area cannot justify an investigatory stop, and flight alone is insufficient to establish reasonable suspicion, a combination of those circumstances may achieve reasonable suspicion. *See id.*

█ Officer King articulated specific facts that established reasonable suspicion before the officers entered the grocery. Officer King testified that he observed appellant in an area known for drug activity.[11] The police officer observed the suspects conduct a complex commercial exchange which had all the characteristics of a drug transaction. For example, the suspects purposefully placed their drug cache at a distance from where the sales occurred, and the suspects bifurcated their duties—one suspect recruited sales and accepted cash and the other retrieved the narcotics and held the proceeds of sale. Further, when Rivera noticed the cruiser, appellee and Rivera abruptly fled from the area, leaving behind the phen-

---

**11.** Officer King was well aware of the narcotics commerce on Butler Street, particularly between Sixth and Tenth Streets. He has witnessed between 300 and 500 narcotics transactions conducted in the environs. Over the span of his career, he has conducted nearly 1000 drug-related arrests, 100 of which took place in this vicinity.

cyclidine. At this point, Officers King and Murray possessed an articulable basis for suspecting that criminal activity was afoot. Individually, these facts would not amount to reasonable suspicion; however, when viewed under the totality of the circumstances, the pursuit of appellee and Rivera was supported by at least reasonable suspicion. *See Riley*, 715 A.2d at 1135.

A law enforcement officer who "lacks the precise level of information necessary for probable cause to arrest" but possesses reasonable suspicion of criminal activity, is not required "to simply shrug his shoulders and allow ... a criminal to escape." *Commonwealth v. Lagamba*, 418 Pa.Super. 1, 613 A.2d 1, 5 (Pa.Super.1992), *appeal denied*, 533 Pa. 608, 618 A.2d 399 (1992) (quoting *Commonwealth v. Ferraro*, 237 Pa.Super. 268, 352 A.2d 548, 550 (1975)). Rather, the officer may conduct a brief, investigatory stop to maintain the *status quo* temporarily while obtaining more information. *Lagamba*, 613 A.2d at 5. The suppression court concluded that appellee and Rivera were subject to a custodial as opposed to an investigative detention when the police entered the corner grocery because appellee "was not permitted to leave the premises." We disagree.

The factors considered to determine whether a detention is investigative or custodial include:

> the basis for the detention (the crime suspected and the grounds for suspicion); the duration of the detention; the location of the detention (public or private); whether the suspect was transported against his will (how far, why); the method of detention; the show, threat or use of force; and, the investigative methods used to confirm or dispel suspicions.

*In Interest of S.J.*, 551 Pa. 637, 642, 713 A.2d 45, 47 (1998) (plurality opinion) (quoting *Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269, 1274 (1995)).

Here, the officers entered the grocery and asked appellee and Rivera to step away from the counter, but did not touch either suspect until Rivera became unruly and physically resisted the officers. At that time, the police officers employed the minimum amount of force necessary to restrain Rivera, and no force was exercised on appellee. The police officers did not search the suspects during the detention, and the police implemented the minimal amount of force necessary to secure the suspects while they completed their investigation. The detention only lasted fifteen seconds. During that time, the police officers diligently pursued a means of investigation which instantly confirmed their suspicions. We cannot agree that the brief period of detention that occurred prior to Officer King's retrieval of the phencyclidine was the functional equivalent of a custodial arrest. The police officers' minimal use of physical force to maintain the *status quo* while conducting the investigation did not transmogrify the detention into an arrest.

Accordingly, we revere the portions of the suppression court's order that suppressed the phencyclidine recovered by police.

Order reversed in part. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.