**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jermaine ROBERTS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 2, 2001.

Filed March 15, 2001.

John E. Kravitz, Norristown, for appellant.

Bruce L. Castor, Asst. Dist. Atty., Norristown, for Com., appellee.

Before POPOVICH, JOHNSON and OLSZEWSKI, JJ.

POPOVICH, J.:

¶ 1 This is an appeal from the judgment of sentence entered on July 5, 2000, in the Court of Common Pleas, Montgomery County. After a bench trial, Appellant Jermaine Roberts was convicted of possession of a controlled substance and possession with intent to deliver. The court sentenced Appellant to three to ten years of imprisonment. The sole issue that Appellant presents on appeal is whether the trial court erred in denying his motion to suppress the 4.24 grams of crack cocaine seized from the vehicle in which Appellant was sitting. We affirm.

¶ 2 As this Court recently stated in *Commonwealth v. Palmer*, 751 A.2d 223 (Pa.Super.2000), the standard of review of suppression rulings is well-established:

When we review the ruling of a suppression court, we must first ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. Where the defendant challenges an adverse ruling of the suppression court, we will consider only evidence for the prosecution and whatever evidence for the defense remains uncontradicted in context of the whole record. If there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error. If there is sufficient evidence of record to support the suppression court's ruling and that court has not misapplied the law, we will not substitute our credibility determination for that of the suppression court judge.

*Id.,* 751 A.2d at 225 (citations omitted).

¶ 3 After careful review of the record in the present case, we conclude the evidence supported the court's factual findings.

During the suppression hearing, the lower court made the following findings of fact:

Officer Raymond E. Emrich, Jr., of the Norristown Police Department, was operating a marked patrol car, in full uniform, in the area of the 700 block of Norristown's West Lafayette Street, and he was proceeding east.

That area was described by him to be a high drug, high crime area. He reported that he had made some 10 drug arrests on that particular street in that area. It was also described as being a half a block from the West Side Bar which was described as being a bar that had related to it some drug activity.

He had his high beams on as he saw a red vehicle from about three to four car lengths, this facing westbound so that the drivers' side of the vehicles, the patrol car and the car later identified as being occupied by the Defendant, would have faced each other. He saw this black male reclining in the driver's seat. This person was later identified as the Defendant.

The Officer saw a second black male known to him to be a crack cocaine addict, person by the name of Aaron Woodbury. Mr. Woodbury had previously admitted to this Officer that he was, in fact, a crack cocaine addict. The Officer was personally familiar with him. This Mr. Woodbury was observed standing immediately at the driver's side window of the vehicle, the window was down. Mr. Woodbury's hand was on the open portion of the window. This [was] described as being the area where the window would recess into the doorway. And the Officer saw the driver hand something to Mr. Woodbury, something described as small. Immediately, Mr. Woodbury cupped the item and appeared to be hiding it. Mr. Woodbury immediately left the area upon being observed by the Officer. In other words, the Officer's high beams fell on these individuals as they were conducting their transaction.

Officer Emrich immediately called for assistance and now utilized his spot light in addition to his headlight. He was able to immediately, at that point, identify the driver of the car as the Defendant, known to him from prior arrests—but these were not drug-related arrests. Now, this all [was] occurring at 4:29 a.m. The Officer also knew, at that time, that the Defendant lived approximately four-and-one-half blocks away.

The Officer left his vehicle and approached the vehicle possessed or occupied by the Defendant, who was the only person in the car at that time.

The keys were in the ignition, the car was not running, the ignition was in the position allowing items within the car to be run from the cigarette lighter, and the Defendant was utilizing a portable TV plugged into the lighter and was watching that TV in a reclining position.

Officer Emrich told the Defendant that he had just seen a drug transaction and he asked the Defendant, words to the effect: Do you have any weapons or drugs. Whereupon, the Defendant immediately responded: No, Ray, I don't have anything on me. You can check me and the car. The Defendant, contemporaneous with that conversation, stepped out of the vehicle and he stated to the officer that it was his girlfriend's car. It was learned that he had $17 and pager, but no driver's license.

The Defendant was asked and agreed to go into the back of the patrol car. The Officer described this as being done for his own safety. The window of the back of the patrol car was down, the Defendant was told he was not under arrest, he was not handcuffed, there was

no other show of force or restraint, and the Defendant was not locked into the vehicle.

Now, the officer went into the vehicle and on the back seat in the area near the reclining driver's seat was found a McDonalds' bag. As he was retrieving that bag he heard the car door open, realized it was his police car being opened. He saw within the McDonalds' bag a Ziploc baggie, in that bag were other items identified by the Officer as being crack cocaine, in his view, at that time. This was later confirmed by laboratory reports.

He had called for backup, a second police officer had arrived, but his whereabouts have not been pinpointed on this record. The door opening had been his police car door and the Defendant fled from the area.

N.T., Suppression Hearing, 5/9/2000, at 34–37.

¶ 4 Officer Emrich filed a criminal complaint against Appellant, and an arrest warrant was issued. Appellant was picked up on the warrant in Philadelphia.

¶ 5 Appellant filed a motion to suppress the drugs found as a result of an illegal search. On May 9, 2000, the lower court denied the motion. After a bench trial on May 10, 2000, the lower court found Appellant guilty of possession of a controlled substance and possession with intent to deliver. On July 5, 2000, Appellant was sentenced to three to ten years of imprisonment. Appellant timely appealed from his judgment of sentence.

¶ 6 In *Commonwealth v. Boswell,* 554 Pa. 275, 721 A.2d 336 (1998), our Supreme Court stated:

Interaction between police and citizens may be characterized as a "mere encounter," an "investigative detention," or a "custodial detention." Police may engage in a mere encounter absent any suspicion of criminal activity, and the citizen is not required to stop or to respond. *Commonwealth v. Vasquez,* 703 A.2d 25, 30 (Pa.Super.1997). If the police action becomes too intrusive, a mere encounter may escalate into an investigatory stop or a seizure. *Commonwealth v. Jackson,* 428 Pa.Super. 246, 249, 630 A.2d 1231, 1233 (1993). If the interaction rises to the level of an investigative detention, the police must possess reasonable suspicion that criminal activity is afoot, and the citizen is subjected to a stop and a period of detention. *Id.* Probable cause must support a custodial detention or arrest. *Id.*

*Id.* at 284, 721 A.2d at 340.

¶ 7 The record indicates that the initial contact between Officer Emrich and Appellant was a mere encounter. The purpose of a mere encounter is to determine the individual's identity or to maintain the status quo momentarily while obtaining more information. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

¶ 8 Officer Emrich[1] saw what appeared to be a drug transaction between Appellant and a known drug addict. Officer Emrich pulled his police cruiser across the street from Appellant. At this point, he recognized Appellant. Officer Emrich approached him and said that he believed that he had just seen a drug transaction. Officer Emrich then asked Appellant if he had any drugs or weapons. Appellant told Officer Emrich that he did not, and, with-

---

**1.** At the time of the incident, Officer Emrich was a seven-year veteran of the Norristown Police Department and a member of the Bu-

reau Narcotics Investigation Drug Task Force.

out any prompting, said that the officer could search him and the vehicle. When Appellant, voluntarily, consented to a search of his person and the vehicle, Officer Emrich had "merely encountered" Appellant. There is nothing in the record to indicate that Officer Emrich, by physical force or show of authority, restrained Appellant's liberty at the point in time where Appellant consented to a search. The police cruiser was parked across the street, so Appellant could have driven away. Appellant consented to being searched.[2] Officer Emrich's approach of Appellant was a mere encounter. *Cf. Commonwealth v. Jones,* 474 Pa. 364, 370, 378 A.2d 835, 838 (1977) (there is nothing in the Constitution which prevents a police officer from approaching a person on the streets in order to make an inquiry).

> If a person voluntarily consents to a search, evidence found as a result of that search is admissible. The consent, however, must be given freely, specifically, unequivocally and voluntarily. The question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. The burden of proving a valid consent to search rests upon the Commonwealth.

*Commonwealth v. Roland,* 701 A.2d 1360, 1363 (Pa.Super.1997) (citation omitted).

¶ 9 As the facts above show, Appellant's consent was voluntary. At no time was Appellant's liberty restricted. He was not physically detained, was not asked for consent, was not under arrest and was not

coerced in any fashion. Appellant, without prompting from Officer Emrich, gave permission to search his person and the vehicle. Since the consent was voluntary, the evidence obtained was admissible. *See Roland,* 701 A.2d at 1363.

¶ 10 Even if we assume *in arguendo* that Officer Emrich's stop of Appellant rose to the level of an investigatory stop, we find that Officer Emrich possessed reasonable suspicion that criminal activity was afoot. To justify an investigatory stop, at its inception, the police must have a reasonable suspicion that criminal activity is afoot. *See Commonwealth v. Riley,* 715 A.2d 1131, 1135 (Pa.Super.1998), *appeal denied,* 558 Pa. 617, 737 A.2d 741 (1999). To determine whether reasonable suspicion exists, this court views the totality of the circumstances through the eyes of a trained officer. *See id.,* 715 A.2d at 1135.

¶ 11 Appellant contends that Officer Emrich did not have reasonable suspicion or probable cause to stop him. He argues that the cases of *Commonwealth v. Banks,* 540 Pa. 453, 658 A.2d 752 (1995) (Castille, J. dissenting), and *Commonwealth v. Tither,* 448 Pa.Super. 436, 671 A.2d 1156 (1996), are factually similar, and, therefore, the lower court erred in failing to suppress the evidence resulting from an unlawful stop.

¶ 12 In *Banks,* a police officer observed two individuals exchange a small object for cash in a street corner during the early afternoon in a high crime area. Our Supreme Court found that these facts did not establish probable cause. The Court not-

---

**2.** Officer Emrich, for his own safety, placed Appellant in the back of his police cruiser to conduct the search. He informed him that he was not under arrest and was not handcuffed. The officer rolled the window down so Appellant would not be detained. Appellant was able to open the door at anytime. In fact he

did so and fled the scene. At no time did Officer Emrich restrain Appellant's liberty, as was quite evident from the fact that Appellant was able to flee the scene. However, we need not concern our analysis with this action because Appellant gave consent before being placed in the back of the police cruiser.

ed that a trained narcotics officer observed neither drugs nor containers commonly known to carry drugs being exchanged, that the police officer did not observe multiple transactions, and that the police officer was not responding to a citizen's complaint or informer's tip. The Court stated, "This is simply a case where a police officer chanced upon a single isolated exchange of currency for some unidentified item or items, taking place on a public street corner at midday, and where appellant fled when approached by the officer." The Court found that these facts did not establish probable cause for detention.

¶ 13 In *Tither*, a police officer on patrol in a high crime area heard a person yell "5-0," indicating that police where in the area, and observed a person reaching into a car parked along the road. The officer suspected that this was a drug transaction and stopped the vehicle as it left the scene. This Court held that these facts did not constitute reasonable suspicion of criminal activity to justify the investigatory stop because the officer did not witness a transaction between the two individuals, did not see any money or drugs in the possession of either party and the officer did not have any information that appellant was involved in criminal activity. *See Tither*, 671 A.2d at 1158.

¶ 14 We find that Appellant's situation is distinguishable from *Banks* and *Tither* and analogous to *Commonwealth v. Pizarro*, 723 A.2d 675 (Pa.Super.1998). In *Pizarro*, our Court found that the police officers possessed the requisite level of suspicion necessary to detain appellee. We held that while mere presence in a heavy drug-trafficking area cannot justify an investigatory stop, and flight alone is insufficient to establish reasonable suspicion, a combination of those circumstances may achieve reasonable suspicion. *See id.*, 723 A.2d at 680 (citing *Riley*, 715 A.2d at 1135). The

facts that led to the officers' reasonable suspicion were as follows: appellee was in an area known for drug activity, appellee was observed conducting a complex commercial exchange that had all the characteristics of a drug transaction and appellee fled when co-defendant noticed a police cruiser. We found that individually, these facts would not amount to reasonable suspicion, but when viewed under the totality of the circumstances, the pursuit of appellee was supported by at least reasonable suspicion. *See Pizarro*, 723 A.2d at 680.

¶ 15 In the present case, we find that Officer Emrich had reasonable suspicion to stop Appellant. Officer Emrich, a narcotics officer with considerable drug training who had made ten to twenty drug-related arrests on West Lafayette Street alone, testified that he saw a hand-to-hand exchange occurring between a known crack addict and a person in a vehicle. This exchange occurred at 4:29 a.m. in a high drug traffic area, approximately one-half block from a bar notorious for drug activity. He could see the exchange clearly because he was about three car lengths from the transaction and his cruiser's high beams were shining directly on the exchange. The crack addict cupped the small item in his hand, and when he saw the police cruiser, he fled the scene. Officer Emrich approached the vehicle and recognized Appellant, who resided a mere four and half blocks away. He was reclining in the driver's seat and watching a portable television. These facts gave Officer Emrich reasonable suspicion to stop Appellant to make further inquiry. From this investigatory stop, Officer Emrich obtained consent from Appellant to search his person and the vehicle. Like we noted before, Officer Emrich did not solicit the consent to search, Appellant gave it voluntarily. Therefore, the trial court did not err in failing to suppress evidence of a

consensual search obtained during a lawful investigatory stop.

¶ 16 Since we have found that Officer Emrich did not restrict Appellant's liberty prior to his voluntary and unsolicited consent to a search of his person and the vehicle, Appellant was not seized within the meaning of the law. Appellant's unsolicited consent to a search of his person and the vehicle was free, specific, unequivocal and voluntary. Therefore, the evidence obtained was admissible. We find that the trial court did not err in denying Appellant's motion to suppress.[3]

¶ 17 Judgment of sentence affirmed.

---

**3.** The lower court found that Officer Emrich could detain Appellant for investigatory purposes because he reasonably believed the criminal activity was afoot, and since the detention was valid, Appellant's consent was valid. However, we find that the interaction between Officer Emrich and Appellant did not even rise to the level of an investigatory detention. *Cf. Commonwealth v. Garcia,* 746 A.2d 632, 638 (Pa.Super.2000) (this court may affirm the decision of the trial court if there is any basis on the record to support the trial court's action; this is so even if we rely on a different basis in our decision to affirm). *See also Commonwealth v. Phinn,* 761 A.2d 176 (Pa.Super.2000); *Commonwealth v. Clutter,* 419 Pa.Super. 275, 615 A.2d 362, 366 n7 (1992).