J-S17038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MICAH ANTHONY GOVENS | : | |
| | : | |
| Appellant | : | No. 1673 EDA 2016 |

Appeal from the Judgment of Sentence April 27, 2016
in the Court of Common Pleas of Delaware County,
Criminal Division, No(s): CP-23-CR-0147-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MICAH ANTHONY GOVENS | : | |
| | : | |
| Appellant | : | No. 1683 EDA 2016 |

Appeal from the Judgment of Sentence April 27, 2016
in the Court of Common Pleas of Delaware County,
Criminal Division, No(s): CP-23-CR-0002608-2015

BEFORE: OLSON, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 22, 2017**

Micah Anthony Govens ("Govens") appeals from the judgment of

sentence imposed following his convictions, at No. CP-23-CR-0002608-2015

(hereinafter "No. 2608-2015"), of possession with intent to deliver a

controlled substance, firearms not to be carried without a license and

possession of a firearm with altered manufacturer's number, and at No. CP-

23-CR-0000147-2016 (hereinafter "No. 147-2016"), of persons not to

possess firearms.[1]   We reverse the judgment of sentence and discharge Govens.

On January 10, 2015, City of Chester Police Patrol Officer German Sabillon ("Officer Sabillon") responded to a call, at approximately 1:30 a.m., regarding a large group fighting on the street in front of the Gold Room, a bar located at 520 Edgmont Avenue in Chester, Delaware County.  When Officer Sabillon arrived at the scene, he observed about 50 or more people outside the bar, and a group of women fighting in the middle of the street. Officer Sabillon and the other responding officers (a total of 9 officers) told people to clear the area.

At that time, a woman getting into her car got Officer Sabillon's attention, told him that she saw a man put a gun in his pocket, gave a description, and pointed toward Govens.  Based on the woman's tip, Officer Sabillon radioed to two officers who were standing near Govens, told them to make a pedestrian stop, and informed them that Govens may have a gun. The assisting officers, Officer Kevin Schiller ("Officer Schiller") and Officer Roosevelt Turner ("Officer Turner"), approached Govens, one on either side of him, and grabbed him by the arms to restrain him.

Officer Sabillon approached, and the officers instructed Govens to remove his hands from his coat pockets.  Govens did not immediately comply, but he eventually removed his left hand from his pocket.  Officer

---

[1] **See** 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. §§ 6106(a)(1), 6110.2(a), 6105.

Sabillon reached toward Govens's right hand, which was still in his pocket, and alerted the other officers that he felt a gun. Officer Turner pulled Govens's hand out of his pocket, and Officer Sabillon removed the gun from his hands and took out the magazine. Govens was subsequently arrested, handcuffed, and taken to the police station. Officer Turner conducted a custodial strip search, at which time he recovered drugs from Govens's person.

Govens was charged with possession with intent to deliver, firearms not to be carried without a license, possession of a firearm with altered manufacturer's number, and persons not to possess firearms at No. 2608-2015. After a preliminary hearing, the persons not to possess firearms charge was dismissed for lack of evidence. On July 10, 2015, Govens filed an Omnibus Pretrial Motion, including, *inter alia*, a Motion to suppress physical evidence and statements regarding No. 2608-2015, on the basis that the evidence was the result of an illegal search. The suppression court conducted a hearing, during which Officer Sabillon was presented as the only witness. The suppression court denied Govens's Motion to suppress. Govens subsequently filed a Motion for reconsideration of the denial of his Motion to suppress.

On February 4, 2016, the Commonwealth re-filed the charge of persons not to possess firearms at No. 147-2016. On February 23, 2016, Govens filed an omnibus Pretrial Motion, including, *inter alia*, a Motion to

suppress physical evidence and statements regarding No. 147-2016. The suppression court conducted a hearing, during which Govens and the Commonwealth agreed to incorporate the notes of testimony from the suppression hearing at No. 2608-2015, and the preliminary hearing at No. 147-2016, as both the Motion for reconsideration and the Motion to suppress involved the same factual and legal issues. On March 22, 2016, the suppression court denied both Motions.

Following a stipulated bench trial for both cases, Govens was convicted of the above-mentioned crimes.[2] On April 27, 2016, the trial court sentenced Govens to an aggregate prison term of 60 to 120 months. Govens filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal as to each case.[3]

On appeal, Govens raises the following question for our review:

Whether the [suppression c]ourt erred in refusing to suppress the fruits of the warrantless seizure of [] Govens'[s] person and subsequent searches, all of which were conducted without legal justification and in violation of the rights guaranteed to [] Govens by the Fourth and Fourteenth Amendments of the United

---

[2] The parties agreed to incorporate the notes of testimony from the suppression hearing, along with the affidavit of probable cause and notes of testimony from the preliminary hearing. *See* N.T., 4/27/16, at 5. Additionally, the parties stipulated that the recovered firearm was operable, and the serial number was defaced; Govens was not licensed to carry a firearm, and had prior felony convictions; and the drugs recovered during Govens's custodial strip search tested positive for cocaine. *See id.* at 5-6.

[3] On July 26, 2016, this Court granted Govens's request for consolidation of No. 2608-2015 and No. 147-2016.

States Constitution, and Article I, Section 8 of the Pennsylvania Constitution?

Brief for Appellant at 5.

> In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Arnold*, 932 A.2d 143, 145 (Pa. Super. 2007) (citation omitted).

Govens argues that the trial court erred in denying his Motion to suppress physical evidence because the stop was not supported by reasonable suspicion. Brief for Appellant at 11, 14-16. Govens asserts that the investigative detention was based solely on an accusation by an anonymous source that Govens possessed a gun. *Id.* at 15-16. Govens claims that the officers needed additional information pointing to criminal conduct in order to form the requisite reasonable suspicion. *Id.* at 17. Additionally, Govens avers that even if firearm possession were *per se* illegal, he was still unlawfully detained because the officers relied solely on an uncorroborated, anonymous tip. *Id.* at 20.

There are three categories of interactions between police and a citizen evaluated pursuant to Article I, Section 8 of the Pennsylvania Constitution:

The first of these is a "mere encounter" (or request for information)[,] which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted).

Here, it is undisputed that Govens was subjected to an investigative detention. When evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of *Terry v. Ohio*, 392 U.S. 1 (1968), wherein the United States Supreme Court held that police may conduct an investigatory detention if they have reasonable suspicion that criminal activity is afoot.

In deciding whether reasonable suspicion exists for an investigatory detention, the fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight.

*Commonwealth v. Gray*, 784 A.2d 137, 141-42 (Pa. Super. 2001) (citations and paragraph break omitted).

"To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens." *Commonwealth v. Lohr*, 715 A.2d 459, 461 (Pa. Super. 1998). With respect to these third-party "tips," we have held that

> [r]easonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were reliable.
>
> When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion.

*Commonwealth v. Barber*, 889 A.2d 587, 593 (Pa. Super. 2005) (some internal quotations and citations omitted). Additionally, an in-person tip may be effectively anonymous if the individual providing the tip is unknown to the police officer. *See Commonwealth v. Hayward*, 756 A.2d 23, 35 (Pa. Super. 2000) (stating that "[m]erely because the unknown tipster in the case at bar conveyed his information in person to the police[,] as opposed to telephonically[,] did not automatically endow the information contained within his tip with greater presumed accuracy and reliability. … [The tipster] was and is, in all respects, a completely anonymous individual.").

"While a tip can be a factor, an anonymous tip alone is insufficient as a basis for reasonable suspicion." *Gray*, 784 A.2d at 142. Merely viewing a person who matches the description of the anonymous tip does not corroborate the tip's allegations of criminal conduct. *Commonwealth v. Jackson*, 698 A.2d 571, 574-75 (Pa. 1997); *see also Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*) (stating that "[p]olice cannot initiate a detention based solely upon an anonymous tip that a person matching the defendant's description in a specified location is carrying a gun."). Instead, when investigating an anonymous tip, the police need an independent basis to corroborate the tip's allegations of criminal activity. *Jackson*, 698 A.2d at 576.

At the suppression hearing, Officer Sabillon testified that on January 10, 2015, at approximately 1:30 a.m., he responded to a call regarding a large group fighting on the street in front of the Gold Room. *See* N.T. (Suppression), 8/25/15, at 7, 10. Officer Sabillon testified that when he arrived at the scene, he observed about 50 people on the street and sidewalk, and "a lot of females were trying to fight in the middle of the street." *Id.* at 14. Officer Sabillon stated that he and the other responding officers began "clearing people out." *Id.* at 13.

Officer Sabillon testified that he was located near the front of the bar, and a woman called him over while she was getting into her car. *See id.* at 14. Officer Sabillon stated that he did not know the woman. *See id.* at 47.

According to Officer Sabillon, the woman told him that she had seen a man put a gun in his pocket, gave a general description, and pointed in Govens's direction. *See id.* at 14.; *see also id.* at 15 (wherein Officer Sabillon testified that the woman specified that the man was wearing a tan coat). Officer Sabillon stated that his interaction with the woman lasted only seconds, and she drove away after giving him the information. *See id.* at 19, 21, 51.

Officer Sabillon testified that based on the woman's description, he could clearly identify Govens as the person she had described. *See id.* at 15, 19; *see also id.* at 19 (wherein Officer Sabillon stated that Govens "stood out because he's really tall."). Officer Sabillon testified that, based on the woman's tip, he radioed to the officers standing closer to Govens (Officer Schiller and Officer Turner), told them to make a pedestrian stop, and warned them about the potential presence of a gun. *See id.* at 21, 26, 53; *see also id.* at 44 (wherein Officer Sabillon agreed that his attention was only drawn to Govens because of the woman's tip). Officer Sabillon testified that he did not surveil the situation before telling the assisting officers to stop Govens. *See id.* at 54. Officer Sabillon testified that he observed Officer Schiller and Officer Turner approach Govens, one on either side of him, and grab him by the arms to stop him.[4] *See id.* at 53-54.

---

[4] The trial court points to Govens's refusal to remove his hands from his pockets, and his apparent anger during the investigative detention, as factors establishing a basis for reasonable suspicion. *See* Trial Court

- 9 -

Additionally, Officer Sabillon testified that, when he arrived at the Gold Room, he did not observe any weapons being displayed, or any suspected drug activity. *See id.* at 43. Officer Sabillon did not observe Govens engaging in a physical altercation. *See id.* at 44. Officer Sabillon testified that, up until the point he searched Govens and found the gun, he did not observe him engaging in illegal activity. *See id.* at 45, 62-63. Officer Sabillon further testified that he did not observe any bulges that would indicate that Govens was carrying a firearm, and Govens did not attempt to elude the officers. *See id.* at 63, 56.

Upon review, we conclude that the totality of the circumstances fail to substantiate a reasonable suspicion that Govens was engaging in criminal activity. By Officer Sabillon's own admission, he instructed Officer Schiller and Officer Turner to stop Govens based solely upon the unknown woman's tip that Govens had put a gun in his pocket. *See Gray*, 784 A.2d at 142; *see also Foglia*, *supra; Hayward*, *supra*. Importantly, the woman did not assert that Govens was involved in illegal activity, or about to commit a crime. *Jackson*, 698 A.2d at 575 (stating that "before the police may undertake a stop and frisk on the basis of an anonymous tip of a man with a gun, the police must establish that they have a reasonable suspicion that the

Opinion, 10/25/16, at 10. However, the trial court's reliance on these "factors" is misplaced, as they were not observed before Govens was seized. *See Commonwealth v. Roberts*, 771 A.2d 23, 27 (Pa. Super. 2001) (stating that an investigatory stop must be supported by reasonable suspicion *at its inception*).

individual is involved in, or about to commit a crime." (citing *Commonwealth v. Hawkins*, 692 A.2d 1068 (Pa. 1997)). Officer Sabillon also failed to surveil the situation or corroborate the anonymous tip before ordering the stop. *See Jackson*, 698 A.2d at 576; *see also Gray*, 784 A.2d at 143 (stating that although the police officers' observation of defendant with a gun "substantiate[d] the information provided in the anonymous tip, it [was] not, in itself, indicative of criminal activity."). Accordingly, Govens was subjected to an illegal detention, and the suppression court erred in failing to suppress the physical evidence obtained during the subsequent searches (*i.e.*, a firearm and cocaine). We therefore reverse the judgment of sentence, and discharge Govens.[5]

Judgment of sentence reversed. Govens discharged.

Judge Stabile joins the memorandum.

Judge Olson files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2017

---

[5] Without the firearm seized by Officer Sabillon, and the cocaine seized by Officer Turner during the custodial search, there is no evidence supporting Govens's convictions.