**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Louis RILEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1998.

Filed June 9, 1998.

Deanna A. Wagner, Public Defender, Harrisburg, for appellant.

Joseph M. Sembrot, Assistant District Attorney, Harrisburg, for the Commonwealth, appellee.

Before DEL SOLE, EAKIN and HESTER, JJ.

DEL SOLE, Judge:

Following a non-jury trial, Appellant Louis Riley was convicted of possession with intent to deliver and possession of drug paraphernalia. Appellant received concurrent sentences of twenty-one to forty-two months imprisonment for possession with intent to deliver, and six to twelve months imprisonment for possession of drug paraphernalia. This appeal followed. We affirm.

■■■■ Appellant's sole issue is whether the trial court properly denied his motion to suppress evidence. In reviewing the ruling of a suppression court, an appellate court must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. *Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269 (1995). In so doing, we consider only the evidence of the Commonwealth and defense evidence which remains uncontradicted when read in the context of the record as a whole. *Commonwealth v. Leighty*, 693 A.2d 1324 (Pa.Super.1997).

The following facts were presented at the suppression hearing.[1] On May 2, 1996, Officer Lavelle Jenkins of the Harrisburg City Police and two other officers were in an unmarked police vehicle conducting drug surveillance in various locations throughout Harrisburg. Officer Jenkins, who has made over 300 undercover drug purchases and been involved in over 100 arrests, was wearing a designated CAN uniform which consists of a blue jacket with a police emblem and CAN police unit on the back. Beneath the jacket, he had a shirt with a police emblem on it and CAN unit on the back, as well as blue jeans. At 9:00 p.m. on the night in question, Officer Jenkins noticed Appellant walking with two other individuals in front of a bar at 15th and

---

1. We note with disapproval the trial court's failure to file an opinion in support of order pursuant to Pennsylvania Rule of Appellate Procedure 1925.

Market Streets. The three stopped walking, stepped into an alleyway, and Appellant began to show the others something he was carrying in his hand. In order to see what Appellant held, Officer Jenkins drove across the street and along the sidewalk next to Appellant. From that vantage point, Officer Jenkins saw Appellant holding a napkin. Officer Jenkins also saw a napkin in Appellant's other hand. Believing Appellant was showing drugs, Officer Jenkins exited his vehicle and began to approach Appellant to investigate. Then, Appellant discarded the napkin and began to walk away, as did the other individuals. As Officer Jenkins approached Appellant, he identified himself as Harrisburg Police. Appellant began to run and Officer Jenkins followed. During the chase, Appellant discarded a second napkin, which Officer Jenkins retrieved. Appellant was apprehended one block from the place where the chase began. The napkin retrieved during the chase contained cocaine, the napkin recovered from the scene of the initial confrontation contained cocaine residue.

Appellant claims that the physical evidence as well as his statement to police should be suppressed because Officer Jenkins lacked reasonable suspicion to warrant the initial investigatory stop of Appellant or probable cause to warrant his subsequent arrest. Appellant argues that the abandonment of the contraband while Officer Jenkins was exiting the vehicle and his subsequent abandonment of additional contraband during the chase was coerced by Officer Jenkins' constitutionally infirm investigatory stop and seizure. Appellant contends that under the Pennsylvania Constitution as interpreted in *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769 (1996) this evidence should be suppressed.

■ In *Matos,* a challenge under Article 1 Section 8 of the Pennsylvania Constitution, our supreme court declined to adopt the United States Supreme Court's Fourth Amendment seizure analysis set forth in *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) and held "... contraband discarded by a person fleeing a police officer are the fruits of an illegal 'seizure' where the police officer possessed nei-

ther 'probable cause' to arrest the individual nor reasonable suspicion to stop the individual ..." *Commonwealth v. Matos,* supra, 672 A.2d at 770. In cases of this type, we must consider whether the pursuit by the police officer was a seizure. If not, then the contraband was abandoned property, lawfully found by the officer. However, if the pursuit was a seizure, then the abandonment was coerced, and the officer must demonstrate either probable cause to make the seizure or a reasonable suspicion to stop and frisk. *Commonwealth v. Matos, supra.*

■ First, we will consider whether the Appellant's action in dropping the first napkin was coerced by illegal police conduct. It is axiomatic that a defendant has no standing to contest the search and seizure of items which he has voluntarily abandoned. *Commonwealth v. Bennett,* 412 Pa.Super. 603, 604 A.2d 276 (1992). Although abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where abandonment is coerced by unlawful police action. *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973). Prior to Appellant's dropping the first napkin, the police pulled up along the sidewalk in an unmarked car and then exited the vehicle in order to approach Appellant and those with him. We find these circumstances amount to nothing more than a mere approach by a law enforcement official. Such encounters between police and a citizen need not be supported by any level of suspicion, and carry no official compulsion on the part of the citizen to stop or to respond. *Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043 (1995). As a result, Officer Jenkins was not required to possess any level of suspicion in Appellant and Appellant was not required to stay when he saw Officer Jenkins approaching him. Rather, Appellant was free to leave. Therefore, Appellant was not subject to a seizure when he discarded the first napkin. Consequently, Appellant's action in abandoning the first napkin was voluntary and not the result of unlawful police coercion. Accordingly, the suppression court properly admitted the first napkin dropped by Appellant into evidence.

Next we address the issue of whether the second napkin dropped by Appellant while he was fleeing Officer Jenkins should have been suppressed. The record shows that once Officer Jenkins announced his presence as a police officer, Appellant took to flight. Therefore, Officer Jenkins' pursuit of Appellant amounted to a seizure and, Appellant argues, the discarded napkin is inadmissible under *Matos.* Accordingly, we must determine whether Officer Jenkins possessed either probable cause to arrest Appellant or reasonable suspicion to stop him. Upon careful consideration of the facts, we find Officer Jenkins possessed the latter.

 In order to justify an investigatory stop, the police must have, at its inception, a reasonable suspicion that criminal activity is afoot. The police must be able to point to specific and articulable facts which reasonably support that suspicion. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969). Particularly, police must possess both suspicious conduct on the part of the persons so detained and a reasonable belief of some sort of criminal activity. *Commonwealth v. Espada,* 364 Pa.Super. 604, 528 A.2d 968 (1987).

 In determining whether a reasonable suspicion exists, we must look to the totality of the circumstances. *Commonwealth v. Wright,* 448 Pa.Super. 621, 672 A.2d 826 (1996). Merely because a suspect's activity may be consistent with innocent behavior does not alone make detention and limited investigation illegal. *Commonwealth v. White,* 358 Pa.Super. 120, 516 A.2d 1211 (1986). Rather, we view the circumstances through the eyes of a trained officer, not an ordinary citizen. *Commonwealth v. Fink,* 700 A.2d 447 (Pa.Super.1997). We are mindful that some of the factors to be considered include various objective observations, information from police reports, if such reports are available, and consideration of modes or patterns of operation of certain kinds of lawbreakers. *Id.*

 Also, we note that while presence in a high drug area is not enough to warrant a stop, *Commonwealth v. Kearney,* 411 Pa.Super. 274, 601 A.2d 346 (1992), and flight from police alone is insufficient to create a reasonable suspicion of criminal activity, *Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992), a combination of circumstances, none of which taken alone would justify a stop, may be sufficient to achieve a reasonable suspicion. *See also Commonwealth v. Moore,* 300 Pa.Super. 488, 446 A.2d 960 (1982) (although flight alone will not justify a stop, a combination of circumstances, none of which taken alone would justify a stop, may be sufficient).

 A review of the facts before the suppression court indicates that Officer Jenkins did possess specific articulable facts at the inception of the pursuit of Appellant to support a finding of reasonable suspicion.[2] Officer Jenkins testified that he observed Appellant in an area known for high drug activity. Appellant and two individuals stepped from the sidewalk and into an alleyway. Appellant was showing the two individuals something he was holding inside of a napkin. In addition, Appellant held another napkin in his other hand. Officer Jenkins also testified that his prior experience and familiarity with the drug trade in Harrisburg provided him with the knowledge that, in the area, drugs are trafficked using napkins. Further, when Appellant saw Officer Jenkins exit the unmarked car, Appellant abruptly discarded the first napkin and began to leave the area. After Officer Jenkins announced himself, Appellant ran from the scene. At this point, which was the inception of the pursuit, Officer Jenkins possessed sufficient articulable facts amounting to suspicious conduct on the part of Appellant and a reasonable belief that some type of criminal activity was afoot.

While the facts discussed above individually would not amount to reasonable suspicion, when viewed under the totality of the circumstances, the aggregate of the facts is more than sufficient to reach this threshold.[3]

---

2. At this point, it is necessary to reiterate Officer Jenkins' undercover narcotics history: Officer Jenkins has made over 300 undercover drug purchases and been involved in over 100 arrests.

3. We find it troublesome that the suppression judge, in reaching his conclusion, included in his

Since Officer Jenkins possessed reasonable suspicion, the seizure was lawful. Consequently, the court properly refused to suppress the second napkin, as well as Appellant's subsequent statement to authorities.

Judgment of sentence affirmed.

oral statement the fact that the officer's suspicion was supported by the fact that drugs were found. N.T. 4/8/97 at 27. The fact that drugs were found is irrelevant to the legal issue of reasonable suspicion. Therefore, the suppression court's analysis was not proper. Rather, the court should have limited its analysis to those facts known by the officer at the inception of the pursuit. We assure the parties that our review of the facts was appropriately limited.