J. S06038/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KEITH REDDY, | : | No. 3114 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered August 18, 2017,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR-0001647-2017,
CP-51-CR-0014479-2012

BEFORE: BOWES, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED MAY 20, 2019**

Keith Reddy appeals from the August 18, 2017 judgments of sentence entered by the Court of Common Pleas of Philadelphia County following his conviction of persons not to possess firearms, carrying firearms without a license, and carrying firearms on public streets in Philadelphia.[1] After careful review, we affirm.

The trial court provided the following synopsis of the relevant factual and procedural history of this case:

> On May 22, 2017, the Court conducted a hearing on [a]ppellant's motion to suppress the physical evidence on the basis that police lacked reasonable suspicion to stop him.

---

[1] 18 Pa.C.S.A. §§ 6105(a), 6106(a), and 6108, respectively.

At said hearing, the Commonwealth presented the testimony of Philadelphia Police Officer Iroabuch Ndukwe. Officer Ndukwe testified that, on December 2, 2016, at approximately 2:15 p.m., he and his partner, Officer Ozorowski, were on routine patrol in the 22nd District when a radio call came through for person with a gun at Poplar and Leland Streets, abutting the 1700 block of Vineyard Street.[Footnote 3] At the time of the call, Officer Ndukwe and his partner were within two blocks of that location. Flash information described the suspect as a black male wearing a black jacket and black hat.[Footnote 4] The officers were in a marked vehicle and in uniform, with Officer Ndukwe riding as passenger/recorder. They proceeded to Poplar and Leland Streets, where three black males were standing in a small park. Officer Ndukwe testified that when they pulled up in their cruiser, he observed that [a]ppellant fit the flash description. Officer Ndukwe cracked his door to get out but before he could do so -- [a]ppellant took off running. Officer Ndukwe gave chase on foot, and his partner followed via patrol car. Officer Ndukwe never lost sight of [a]ppellant during the chase, which lasted only 20 to 30 seconds, not even a full block. During the pursuit, and while he was only three or four steps from [a]ppellant, Officer Ndukwe saw [a]ppellant reach into his waistband, retrieve a black .357 Magnum revolver and throw it over his head onto a rooftop. Officer Ndukwe then tackled [a]ppellant to the ground, and placed him under arrest. The gun subsequently was recovered from the roof of an adjacent property.

[Footnote 3] Poplar and Leland Streets intersect at a triangular point, forming two sides of a triangle, with the 1700 block of Vineyard Street forming the third side of the triangle. Within that triangle lies a small park.

[Footnote 4] On direct examination, Officer Ndukwe testified that flash description was black male, black jacket and black pants; on cross-examination,

however, he corrected himself and said
the pants were not in the flash, and that
he had meant to say black hat.

Officer Ndukwe also testified that at the time of the arrest, he had been a police officer in the 22nd District for three years, and had made numerous arrests, including 15 to 20 gun arrests, and 5 to 6 arrests in the 1700 block of Vineyard Street. He testified that he was familiar with the 1700 block of Vineyard Street as a high crime area for drugs and guns, and that a shooting homicide had occurred in the immediate vicinity (within two blocks) just one week prior to this incident.

At the same hearing, [a]ppellant introduced the 911 and police radio calls. The 911 call was from an anonymous person who provided the description of four or five black males armed with guns, one with a black hat, black jacket. The police dispatcher provided the same flash information, four or five black males armed with guns, one with a black hat and black jacket.

Based on the foregoing evidence, the Court denied [a]ppellant's motion to suppress. Specifically, the Court determined that the anonymous tip in conjunction with the unprovoked flight of [a]ppellant, who fit the flash description and was at the precise location, which was a high crime area, amply provided reasonable suspicion to stop [a]ppellant.

The parties thereafter proceeded to a bench trial, at which the Commonwealth commenced by incorporating all relevant non-hearsay testimony from the suppression hearing into the record. The Commonwealth then introduced the following stipulations: (1) if called, Officer Oshaughnessy would testify that he recovered the firearm at issue from the roof of a garage adjacent to where [a]ppellant was fleeing; and (2) if called, Officer Welsh would testify that he's an expert in the field of firearms identification and testing, and that he tested the subject firearm, which was operable, had a barrel

length of four inches and was loaded with six live rounds when it was recovered. Finally, before resting its case, the Commonwealth introduced: (1) a photograph of the gun; (2) the property receipt for the gun; (3) the actual gun itself; (4) a certificate of non-licensure demonstrating that [a]ppellant did not have a valid license to carry a firearm; and (5) [a]ppellant's criminal extract showing that he had a prior conviction for F1 aggravated assault, rendering him ineligible to possess the subject firearm.

In his case-in-chief, [a]ppellant offered his own testimony. He testified that, on the date and time at issue, he and two friends were standing inside the triangular park at Poplar and Leland Streets, when a police car pulled up to them, and a black male officer jumped out of the passenger seat, pointing his firearm at [a]ppellant's head. Appellant testified that he did not have a gun on him at the time, but nonetheless took off running while his friends stayed put. Appellant explained that only he took off running because he was the only one facing the officer and able to see the officer pointing his weapon. He testified that while he was fleeing, the officer kept yelling, "Where is the firearm?" During the chase, [a]ppellant started to remove his clothing, beginning with his jacket, to show the officer that he did not have a weapon. After discarding his jacket, he attempted to lift his shirt to expose his waistline, at which time the officer tackled and arrested him.

Based on all the foregoing evidence, the Court found [a]ppellant guilty of Persons Not to Possess Firearms, Carrying Firearms without a License; and Carrying Firearms on Public Streets in Philadelphia. On August 18, 2017, upon review of the pre-sentence investigation report and upon consideration of all relevant facts and circumstances of this case, the Court imposed sentence as previously set forth.

Trial court opinion, 5/21/18 2-5 (emphasis in original; citations to record omitted).

On May 22, 2017, after unsuccessfully litigating a motion to suppress and following a bench trial before this Court, [a]ppellant was convicted of Persons Not to Possess Firearms, Carrying Firearms without a License, and Carrying Firearms on Public Streets in Philadelphia. On August 18, 2017, upon review of the pre-sentence investigation report and upon consideration of all relevant facts and circumstances of this case, the Court sentenced [a]ppellant to an aggregate term of four (4) to eight (8) years' incarceration.[Footnote 1]

> [Footnote 1] At the same hearing, [a]ppellant -- who at the time of his arrest was on probation in another case for shooting someone in the chest -- appeared for sentencing following revocation of his probation (VOP). In the VOP matter, the Court imposed a consecutive term of three (3) to six (6) years' incarceration, followed by five (5) years' probation. Appellant's VOP sentence is not subject to this appeal.

On August 28, 2017, [a]ppellant filed post-sentence motions, which the Court denied on September 6, 2017. He subsequently filed a timely notice of appeal, and on January 8, 2018, the Court ordered him to file a Concise Statement of Matters Complained of on Appeal in accord with Pa.R.A.P. 1925(b). Counsel for [a]ppellant filed his Rule 1925(b) Statement on February 16, 2018.[Footnote 2]

> [Footnote 2] As proposed justification for the delay, Counsel cited a discrepancy between the method of mailing as set forth in the Court's proof of service (first class mail) and the purported actual method of mailing (inter-office mail). Rather than consuming resources into whether the above-cited typo caused an *actual* delay in receiving the Order, and in the interest of judicial economy, the

> Court will overlook the untimeliness of [a]ppellant's Rule 1925(b) Statement.

*Id.* at 1-2.

Appellant raises the following issues for our review:

A. Should not this Court address the merits of appellant's appeal where appellant filed one timely appeal for both dockets, CP-51-CR-0001674-2017 and CP-51-CR-0014479-2012 as the matters represented one judgment of sentence imposed by the trial court?

B. Did not the trial court err in failing to grant the motion to suppress where uniformed police, without reasonable suspicion, violated appellant's constitutional rights when they confronted and chased him based on an uncorroborated anonymous tip containing a vague, general description, and absent any evidence corroborating criminal activity?

Appellant's brief at 3.

First, appellant avers that this court should address the merits of his appeal when he filed one notice of appeal, despite the fact that the trial court entered judgments of sentence at two trial court docket numbers. On November 6, 2017, this court issued an order directing appellant to show cause why this appeal should not be quashed because appellant failed to file a notice of appeal in both dockets. Appellant timely responded on November 16, 2017. On November 22, 2017, this court entered an order that discharged the show-cause order and referred the issue to the merits panel.

Preliminarily, we note that two separate notices of appeal should have been filed, as required by case law and the Pennsylvania Rules of Appellate

Procedure. In **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), our supreme court mandated that in cases where "a single order resolved issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." **Id.** at 971 (footnote omitted). The **Walker** court, however, applied its holding prospectively to any notices of appeal filed after June 1, 2018. **Id.** Because appellant filed his notice of appeal before June 1, 2018, we will proceed to consider his appeal on the merits.

In his second issue on appeal, appellant contends that the trial court erred when it denied his motion to suppress evidence. Specifically, appellant takes issue with the trial court's factual determinations that appellant fit a flash description and that appellant's encounter with the police occurred in a high-crime area. (Appellant's brief at 23.)

When addressing an appeal from a trial court's denial of a motion to suppress evidence, we are held to the following standard:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination

of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-784 (Pa.Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013), quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361-362 (Pa.Super. 2012), *appeal denied*, 57 A.3d 68 (Pa. 2012) (citations omitted).

Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1995) (citations omitted).

"The appellate courts have mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity." *Commonwealth v. Barber*, 889 A.2d 587, 593 (Pa.Super. 2005) (citation omitted). "Reasonable suspicion is a less demanding standard than probable cause because it can be established by information that is different

in quantity and quality than that required for probable cause; it can arise from information that is less reliable than that required to show probable cause." *Commonwealth v. Emeigh*, 905 A.2d 995, 998 (Pa.Super. 2006) (citation omitted).

> To meet the standard of reasonable suspicion, "the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. In ascertaining the existence of reasonable suspicion, we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot." *Barber*, *supra* at 593 (citations and quotations omitted). Further, "police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens." *Id.*

*Commonwealth v. Smith*, 904 A.2d 30, 35-36 (Pa.Super. 2006).

In cases where the police act as a result of an anonymous tip, we have required additional corroborating evidence.

> While a tip can be a factor, an anonymous tip alone is insufficient as a basis for reasonable suspicion. [*Commonwealth v.*] *Wimbush*, 750 A.2d [807,] 811 [(Pa. 2000)]; [*Commonwealth v.*] *Jackson*, 698 A.2d [571,] 572 [(Pa. 1997)]. Such anonymous tips must be treated with particular suspicion. *Jackson*, 698 A.2d at 573. Likewise, presence in a high crime area alone or flight alone does not form the basis of reasonable suspicion. *Commonwealth v. Cook*, [] 735 A.2d 673, 677 ([Pa.] 1999). However, a combination of these factors may be sufficient. *See* [*Commonwealth v.*] *Zhahir*, 751 A.2d [1153,] 1157 [(Pa. 2000)] (noting that suspicious conduct corroborates an anonymous tip); *Cook*, 735 A.2d at 677 (stating that circumstances which alone would be insufficient may combine to show reasonable

> suspicion); []; [***Commonwealth v.***] ***Pizzaro***, 723 A.2d [675,] 680 [(Pa.Super. 1998)] (finding that flight along with presence in heavy drug-trafficking area may demonstrate reasonable suspicion). . . . ***Terry*** [***v. Ohio***], 392 U.S. [1,] 22 [(1968)] (innocent facts, when taken together, may warrant further investigation); ***Commonwealth v. Riley***, 715 A.2d 1131, 1135 (Pa.Super. 1998) ("a combination of circumstances, none of which alone would justify a stop, may be sufficient to achieve a reasonable suspicion").

***Commonwealth v. Leonard***, 951 A.2d 393, 396-397 (Pa.Super. 2008), quoting ***In the Interest of M.D.***, 781 A.2d 192, 196-197 (Pa.Super. 2001).

Here, the record supports the trial court's conclusion that the police had reasonable suspicion to stop appellant. Specifically, the record reflects that the flash bulletin, dispatched as the result of an anonymous 911 call, included a description of appellant. (Notes of testimony, 5/22/17 at 11.) The flash bulletin also indicated that the individual described had a gun and was located in the area near the 1700 block of Vineyard Street, Poplar Street, and Leland Street. (***Id.*** at 10.) Through his testimony, Officer Ndukwe indicated that this was a high-crime area. (***Id.*** at 19.) Officer Ndukwe corroborated the information received from the flash bulletin upon his arrival at the scene. (***Id.*** at 13.) Officer Ndukwe also testified that immediately upon his arrival, appellant started running. (***Id.*** at 14-15.)

Accordingly, we find that the suppression court did not abuse its discretion when it denied appellant's motion to suppress. The record demonstrates that the information provided by the anonymous 911 caller that

was then subsequently dispatched via the flash bulletin was independently corroborated by the police and that the police had the requisite reasonable suspicion in order to conduct an investigatory detention.[2]  Therefore, the record supports the trial court's factual findings, the legal conclusions drawn from those facts are correct, and appellant's second issue is without merit.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/19

---

[2] Moreover, we note that unprovoked flight in a high-crime area is sufficient to create reasonable suspicion that criminal activity is afoot for the police to conduct a **Terry** stop.  **Commonwealth v. Washington**, 51 A.3d 895, 898 (Pa.Super. 2012), citing **Commonwealth v. Brown**, 904 A.2d 925, 930 (Pa.Super. 2006), **appeal denied**, 919 A.2d 954 (Pa. 2007).  Here, the record reflects that appellant fled immediately upon Officer Ndukwe's arrival at the scene as soon as Officer Ndukwe opened his car door.  (Notes of testimony, 5/22/17 at 14.)