J-A13045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL LITTLE, | : | |
| | : | |
| Appellant | : | No. 1444 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 28, 2019
in the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0000735-2018

BEFORE:   BENDER P.J.E., LAZARUS, J. and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.:        **FILED OCTOBER 14, 2020**

Paul Little (Appellant) appeals from the judgment of sentence of 7½ to 20 years' imprisonment imposed following his convictions for possession of a controlled substance, possession with intent to deliver (PWID) a controlled substance, and possession of drug paraphernalia.  Upon review, we affirm.

The evidence presented at Appellant's jury trial can be summarized as follows.  On December 20, 2017, at about 10:30 a.m., Trooper Brian Konopka of the Pennsylvania State Police was conducting a stationary patrol on Interstate 78 in Lehigh County.  Trooper Konopka was patrolling in a marked vehicle and in full uniform, and observing westbound traffic at mile marker 62.9.  Trooper Konopka observed a black Nissan Versa with dark

_____

[*] Retired Senior Judge assigned to the Superior Court.

aftermarket tint on its rear passenger windows and rear windshield in violation of the Motor Vehicle Code, 75 Pa.C.S. § 4524, traveling westbound on Interstate 78. Trooper Konopka initiated a traffic stop, utilizing his emergency lights, in the area of mile marker 61.4. Appellant, the driver of the Nissan Versa, pulled over without incident.

Trooper Konopka ran Appellant's New York registration plate and determined the vehicle was registered to a female. Trooper Konopka approached the passenger side of the vehicle. Appellant, a male, was the sole occupant of the vehicle. Appellant lowered both the front and rear passenger side windows of the vehicle. Trooper Konopka told Appellant why he initiated the traffic stop, and observed four air fresheners, one in each of the four individual vents, located in the front dash of the vehicle. Trooper Konopka requested that Appellant provide his driver's license, vehicle registration, and proof of insurance. Appellant provided his license, but he had difficulty finding the vehicle registration and proof of insurance. In the meantime, Appellant stated that he frequently drove the vehicle, but his aunt, Sharon Patterson, with whom he resides in New York, was the owner of the vehicle.

Trooper Konopka requested that Appellant exit the vehicle, but Appellant ignored his request and continued to search the vehicle for the requested documents. It appeared to Trooper Konopka that Appellant was aimlessly searching in an effort to stall. Trooper Konopka again requested

Appellant exit the vehicle. Appellant ignored Trooper Konopka and avoided eye contact as he continued to search for the vehicle registration and proof of insurance. Appellant eventually found the vehicle registration and provided it to Trooper Konopka, but continued to search for his proof of insurance instead of exiting the vehicle as requested. For a third time, Trooper Konopka requested Appellant exit the vehicle, to which Appellant inquired if he was required to do so and stated that he did not want to exit the vehicle. Trooper Konopka replied that he was required to do so by law, and Appellant complied.

Once outside the vehicle, Appellant avoided eye contact with Trooper Konopka and stood in a "defensive posture," where his body was beyond perpendicular to Trooper Konopka's body, with his hands in his pockets. N.T., 2/4/2019, at 44. Trooper Konopka inquired if he could do a pat down search of Appellant's person for officer safety reasons. Appellant inquired if Trooper Konopka asks everyone to consent to a pat down search, to which Trooper Konopka replied that he does. Appellant nodded affirmatively to consent to the **Terry**[1] frisk. As he conducted the pat down search, Trooper Konopka began to inquire about his travels, and Appellant's demeanor became more evasive as he started speaking in a lower tone of voice from his prior communication with Trooper Konopka. Trooper Konopka described

_____

[1] **Terry v. Ohio**, 392 U.S. 1 (1968).

Appellant's demeanor as "I want nothing to do with you; defensive; looking away from me." N.T., 2/4/2019, at 50. Appellant stated that he was on his way to Roanoke, Virginia from New York City, New York, and later added that it was a business trip. Appellant had a lanyard with "Blue Raven Solar" on it along with his name and photograph, but there was no other indication that he was traveling for business. Trooper Konopka completed the pat down search without incident.

Nonetheless, based on Trooper Konopka's experience and training, Trooper Konopka observed several indicators of drug trafficking during his interaction with Appellant. Specifically, Trooper Konopka testified that Appellant was driving a third-party vehicle, which is common when trafficking narcotics as an attempt to distance the operator of the vehicle from ownership of contraband that may be found inside the vehicle. Air fresheners were in every vent of the vehicle, which, according to Trooper Konopka may be used as a masking agent for narcotics. He further explained that the tint on the rear passenger windows and rear windshield can allow cover for drug deals to occur within the rear seat of the vehicle, and the further concealment of any hidden compartments. Trooper Konopka also testified that Appellant was traveling from New York City, a common source city in drug trafficking, to Roanoke, a high crime area and destination city for drugs, via Interstate 78, which is a highway notorious for trafficking drugs. Additionally, the vehicle lacked luggage, clothing, and bags that one

would expect for an overnight business trip. Based upon the aforementioned observations, Trooper Konopka asked Appellant if there was anything in the vehicle that would be of concern. Appellant remained defensive and deflected the question by discussing the tint on his vehicle's windows.

Trooper Konopka returned to his police vehicle and requested backup due to Appellant's defensive demeanor. In the meantime, Trooper Konopka ran a criminal history check and a National Crime Information Center (NCIC)[2] check on Appellant. Trooper Konopka discovered Appellant was previously charged with PWID and gun-related offenses. Trooper Konopka returned to Appellant's vehicle and asked Appellant specifically if there was marijuana, heroin, cocaine, a large quantity of U.S. currency, or firearms in the vehicle that he needed to know about. Appellant said "no" and shook his head negatively. At this point, 10 to 12 minutes had elapsed from the initiation of the traffic stop. Believing that Appellant was engaged in narcotics trafficking, Trooper Konopka asked Appellant if he would consent to a search of the vehicle. Appellant vehemently refused. Therefore, Trooper Konopka requested that a state police canine respond to the scene to conduct a canine search of the exterior of the vehicle. Appellant became even more defensive and argumentative in response.

_____

[2] NCIC is a database comprised of criminal justice information, *i.e.*, names of individuals for whom a warrant has been issued, missing persons, and stolen property.

At 11:13 a.m.,[3] Trooper Daniel Reed arrived on scene with his canine partner (Canine Edo).[4] Canine Edo performed an exterior search of the vehicle. Canine Edo alerted, which means he relayed to Trooper Reed that he smelled the presence of drugs, on the exterior of the front driver's side door of the vehicle. Trooper Reed advised Trooper Konopka of Canine Edo's alert, and Trooper Konopka proceeded to perform a search of the interior of the vehicle in the vicinity of the driver's seat. Trooper Konopka observed a bulge under the carpet running from the console to the rear seat, which he believed to consist of wires; two bolts screwed into the rear seats; and carpet glued to the floor. Conspicuously, the rear seat of the vehicle would not lift up or move at all. Being unable to confirm the presence of what he believed to be a hidden compartment underneath the rear seat, Trooper Konopka again requested the assistance of Canine Edo. Canine Edo was placed inside the rear of the vehicle to conduct a search. Canine Edo alerted and then indicated, which is when the canine pinpoints the drug's location, to the rear floorboard in front of the rear seat. Trooper Konopka used an upholstery tool to lift between the top of the seat and its base to verify

---

[3] Trooper Reed was responding from a location 50 miles away, as his territory is Schuylkill and Lebanon counties.

[4] Canine Edo is a Belgian Malinois that started training with Trooper Reed in September of 2015. Canine Edo is certified in the detection of marijuana, cocaine, heroin, and methamphetamine. He and Trooper Reed achieved certification as a team on November 20, 2015.

whether a hidden after-market compartment existed under the rear passenger seat. He noted the presence of gray carpet that was atypical for the space, and a piston-driven actuator[5] that extended the seats when connected to electricity. Trooper Konopka did not possess the tools to open the compartment on the side of the road, and arranged for the vehicle to be towed to the Fogelsville Barracks of the Pennsylvania State Police in order to complete the search with the necessary tools. Consequently, Appellant was handcuffed, detained, and transported to the barracks along with the vehicle.

Once at the barracks, a scope was used to see below the rear seat. Through the scope, Trooper Konopka observed Dinomat, an insulation material typically used in hidden compartments to protect the items within. The hidden compartment was opened using an electronic device. Inside the compartment were one black and one brown plastic bag, each containing a clear vacuum-sealed bag stored with dryer sheets. The substances inside the bags were tested to reveal that one bag contained 574 grams of cocaine, and the other contained 498.96 grams of phenacetin, a common cutting agent for cocaine. Also obtained from the vehicle were car maintenance receipts dated July 2, 2017, and July 28, 2017, and signed by Appellant.

_____

[5] A short cylinder within a tube that moves up and down against a gas to cause a machine or other device to operate.

Appellant was charged as indicated hereinabove, as well as for the improper sunscreening motor vehicle violation.

On April 16, 2018, Appellant filed an omnibus pre-trial motion alleging, *inter alia*, that police instituted an illegal traffic stop, and therefore, the vacuum-sealed bags that the police discovered inside the vehicle required suppression. Appellant's Omnibus Pre-Trial Motion, 4/16/2018, at 2-3 (unpaginated). The trial court held a suppression hearing on November 19 and November 28, 2018, where the trial court heard testimony from Troopers Konopka and Reed. Trooper Konopka testified to his drug interdiction training and experience, including trainings involving hidden compartments. Further, he testified to the traffic stop involving Appellant and the subsequent search of his vehicle. During cross-examination, Appellant's counsel assailed Trooper Konopka's account of the search that involved Canine Edo. Appellant's counsel argued during cross-examination that the canine search was tainted, claiming Trooper Reed provided Trooper Konopka a treat to put in his pocket, thereby intentionally exciting Canine Edo around the vehicle to fabricate probable cause to search. Trooper Konopka denied the accusations. Trooper Reed also testified to his drug interdiction training and experience, as well as his training as a handler of a canine and Canine Edo's training and certifications. He then explained the manner he and Canine Edo searched the vehicle, and stated that Canine Edo alerted to the presence of drugs and indicated the rear floorboard in front of

the rear seat. On cross-examination, Trooper Reed testified that Canine Edo has a "fantastic alert," but his indication is not always perfect and he can be overly excited at times. N.T., 11/28/2018, at 16-17. Appellant's counsel did not question Trooper Reed about the alleged treat-giving, and did not present any additional argument. The trial court took the matter under advisement, and denied Appellant's motion on December 21, 2018. In doing so, the suppression court concluded that (1) the stop and detention were lawful because they were supported by reasonable suspicion and probable cause; (2) Trooper Konopka possessed probable cause to search the vehicle; and (3) Trooper Konopka possessed probable cause to arrest Appellant. Trial Court Opinion, 12/21/2018, at 8.

Appellant proceeded to a jury trial on February 4-5, 2019, where the aforementioned facts were established.[6] Additionally, the Commonwealth presented testimony from Detective John Gill as an expert in the field of narcotics investigation, which the trial court summarized as follows.

> Detective Gill[] opined that [Appellant] was in possession of the cocaine with the intent to deliver it. Indeed, Detective Gill based his opinion on, *inter alia*, the large quantity of cocaine located in the vehicle. He indicated that one-half kilo of cocaine has a street value between $25,000.00 and $37,500.00 without a cutting agent, or $50,000.00 to $75,000.00 by combining the cocaine with phenacetin. In addition, Detective Gill explained that the absence of use paraphernalia [and] the storage of the

---

[6] Simultaneously, Appellant proceeded to a nonjury trial on the summary charge of improper sunscreening. At the conclusion of the trial, the trial court found Appellant guilty of this summary offense.

drugs in vacuum[-]sealed bags were further indicia of [Appellant's] intent to deliver the controlled substance. Also, the hidden compartment with the hydraulic pistons in the vehicle further demonstrated [Appellant's] intent to deliver the cocaine, as this device is used to conceal narcotics from the authorities as well as from rival drug dealers. Detective Gill also discussed that tinted car windows are [] common in the vehicles driven by drug dealers, as they prevent people from seeing within the vehicle.

Trial Court Opinion, 4/24/2019, at 10.

In his defense, Appellant presented the testimony of his aunt, the owner of the vehicle. The trial court provided the following summary of her testimony.

Sharon Patterson, [Appellant's] aunt, testified that her now deceased husband, Alonso Williams, Sr., from whom she separated in 2016, used the subject Nissan Versa more than anyone else.[7] She explained that she was suspicious of his source of funds and feared for her safety due to his associates. [] Patterson also testified that her husband was an electrician who was mechanically inclined.

*Id.*

At the conclusion of the trial, the jury found Appellant guilty of the aforementioned crimes. On March 28, 2019, the trial court sentenced Appellant to an aggregate term of 7½ to 20 years' imprisonment for the charges related to drug possession, and ordered no further penalty on the charge of improper sunscreening.

_____

[7] Patterson's husband was deceased at the time of trial but still living at the time of the traffic stop.

- 10 -

Appellant timely filed a post-sentence motion, in which he challenged the sufficiency and weight of the evidence. On April 24, 2019, the trial court denied Appellant's post-sentence motion and filed an opinion in support thereof. This timely-filed notice of appeal followed.[8]

Appellant raises three issues on appeal, which we have reordered for ease of disposition: 1) a claim that the suppression court erred in denying his motion to suppress due to the illegal extension of a valid traffic stop, and the subsequent warrantless search of his vehicle; 2) a challenge to the sufficiency of the evidence; and 3) a claim that the verdict was against the weight of the evidence.[9] Appellant's Brief at 5-6.

_____

[8] Appellant filed his court-ordered Pa.R.A.P. 1925(b) statement on June 10, 2019, wherein he also requested additional time to file a supplemental 1925(b) statement because he had not yet received the entire transcript of the proceedings. The trial court granted Appellant until July 11, 2019, to file his supplemental 1925(b) statement. On July 11, 2019, Appellant again requested additional time. On July 12, 2019, the trial court denied Appellant's second request. Having not received a supplemental 1925(b) statement, the trial court issued an order directing this Court to its April 24, 2019 opinion, in compliance with Pa.R.A.P. 1925(a). Order, 7/29/2019.

[9] Appellant also raises two additional claims: that the trial court erred when excluding hearsay testimony and that the trial court violated Appellant's due process rights when it cross-examined a defense witness and purportedly indicated that it did not find the witness credible. These issues are waived because Appellant failed to raise them in his Pa.R.A.P. 1925(b) statement. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

**Motion to Suppress**

We begin with Appellant's claim that the trial court erred in denying his motion to suppress. Specifically, Appellant argues that Trooper Konopka impermissibly extended the traffic stop past its initial purpose of investigating improper sunscreening, and conducted a warrantless search of the vehicle with no applicable exception. Appellant's Brief at 30, 36.

When reviewing the denial of a suppression motion, the appellate court may only determine if the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are correct. *See Commonwealth v. Smith*, 177 A.3d 915, 918 (Pa. Super. 2017). We may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted, because the Commonwealth was the verdict winner. *Id.* Our review of suppression rulings includes only the suppression hearing record itself. *See In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

Instantly, Appellant does not challenge the initial traffic stop. Therefore, we address instead whether Trooper Konopka possessed the requisite reasonable suspicion to extend the stop beyond investigating the illegal sunscreening. After a traffic stop that was justified at its inception by a perceived traffic violation, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for

further investigation. *Commonwealth v. Jones*, 874 A.2d 108, 117 (Pa. Super. 2005). We must look to the totality of the circumstances when determining whether a reasonable suspicion exists. *Commonwealth v. Riley*, 715 A.2d 1131, 1135 (Pa. Super. 1998). "Merely because a suspect's activity may be consistent with innocent behavior does not alone make detention and limited investigation illegal. Rather, we view the circumstances through the eyes of a trained officer, not an ordinary citizen." *Id.* (citations omitted).

During Trooper Konopka's initial investigation into the improper sunscreening, he observed the tint and its location on the vehicle, the registration of the vehicle to a third-party, and the presence of several air fresheners. When Trooper Konopka twice asked Appellant to exit his vehicle, he ignored both requests and avoided eye contact. He did not exit the vehicle until Trooper Konopka specified law required it. While outside the vehicle, Trooper Konopka observed Appellant avoiding eye contact and standing in a defensive posture. Appellant indicated that he was traveling from New York City to Roanoke for a business trip, but Trooper Konopka observed Appellant's vehicle was lacking luggage or clothing necessary for an overnight business trip. During the suppression hearing, Trooper Konopka stated several times that Appellant appeared nervous, and his nervousness escalated during the stop. N.T., 11/19/2018, at 15, 51, 72-73. When Trooper Konopka ran Appellant's information, he discovered Appellant

had a criminal history that included drug offenses and gun-related charges. Based upon these factors together along with Trooper Konopka's drug trafficking experience and training, Trooper Konopka believed criminal activity was afoot. Specifically, he believed that Appellant was carrying drugs from New York City to sell elsewhere. Based on the totality of the circumstances, viewed through the eyes of a trained officer, we conclude the suppression court properly determined Trooper Konopka had specific and articulable facts to substantiate a reasonable suspicion of criminal activity, warranting an extension of the initial traffic stop. *See Commonwealth v. Green*, 168 A.3d 180, 185 (Pa. Super. 2017) (holding based on trooper's training and experience, a combination of observations made by trooper during routine traffic stop provided basis for reasonable suspicion of criminal activity, including Green's nervousness, third-party vehicle ownership, travel from a source city of drugs, and Green's criminal background check that revealed a criminal history of drug offenses).

Appellant next challenges the canine search of the exterior of the vehicle and the subsequent search of the interior by Trooper Konopka on scene and at the barracks.

"[A] search warrant is required before police may conduct a search." *Commonwealth v. White*, 669 A.2d 896, 900 (Pa. 1995). As an exception to this rule, police may search a vehicle where there is probable cause to believe that an automobile contains contraband. *Commonwealth v. Gary*,

91 A.3d 102, 242 (Pa. 2014). Pursuant to the Constitution of this Commonwealth, a canine sniff is a search, but "considering the relatively minor privacy interest in the exterior of the vehicle and the minimal intrusion occasioned by a canine sniff ... mere reasonable suspicion, rather than probable cause, is required prior to a dog sniffing the exterior of a vehicle." *Commonwealth v. Harris*, 176 A.3d 1009, 1021 (Pa. Super. 2017) (citation omitted). A positive alert following a police dog sniff, standing alone, provides a police officer with probable cause to conduct a warrantless drug search of a vehicle that was validly detained. *Green*, 168 A.3d at 187.

With this background, we examine whether the trial court erred in concluding that Canine Edo's sniffing of the exterior and subsequent search by the troopers of the interior of the vehicle passed constitutional muster. As discussed *supra*, Trooper Konopka had reasonable suspicion before Canine Edo arrived at the scene. Accordingly, the trial court did not err in denying Appellant's motion to suppress based on the canine search. After Canine Edo alerted to the driver's side door, which indicated to the officers that he had detected the presence of drugs, reasonable suspicion ripened into probable cause. *Id.* Because Trooper Konopka possessed probable cause, the trial court did not err in denying Appellant's motion to suppress the evidence seized as a result of Trooper Konopka's search of the interior of

the vehicle. **See Gary**, 91 A.3d at 242. Accordingly, Appellant is not entitled to relief on this claim.[10]

**Sufficiency of the Evidence**

On appeal, Appellant challenges the sufficiency of the evidence to support his possession, PWID, and possession of drug paraphernalia convictions because the Commonwealth did not prove that he was aware of the presence of the cocaine and phenacetin in the hidden compartment of his aunt's vehicle, and therefore failed to prove he possessed the items. Appellant's Brief at 18-25.

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Giron**, 155 A.3d 635, 638 (Pa. Super. 2017). Further, to address a challenge to the sufficiency of the evidence, we must determine

---

[10] Appellant argues for the first time on appeal that a warrant was required to search the vehicle after it was impounded. Appellant's Brief at 37-38. He claims the automobile exception to the warrant requirement does not apply because the vehicle was taken out of the field, and the inventory search exception does not apply because it was an ongoing criminal investigation when the vehicle was impounded and searched. **Id.** Appellant was required to raise this argument in his suppression motion or at the suppression hearing, not for the first time on appeal. **See** Pa.R.C.P. 581(D) ("The motion shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof."); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Therefore, Appellant failed to preserve this argument and we do not address it.

whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Carr*, 227 A.3d 11, 19 (Pa. Super. 2020). Additionally, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa. Super. 2015).

The only element Appellant challenges is whether the Commonwealth proved that he possessed the contraband found in the vehicle. Appellant's Brief at 18. Specifially, Appellant assails Trooper Konopka's testimony concerning Appellant's behavior during the traffic stop and states that he "conducted no investigation whatsoever" into whether Appellant had any knowledge of the after-market compartment. *Id.* at 22. Moreover, Appellant argues that Patterson's trial testimony leads to "the reasonable inference" that her "husband was using the car for running drugs." *Id.* at 23. Appellant asserts that he "had no reason to know about the hidden compartment in the car, and even if this Court determines the evidence

- 17 -

sufficient on that point, he had no reason to know what was inside of it."

***Id.*** at 24.

Because Appellant was not in actual possession of the contraband, the

Commonwealth needed to prove that he had constructive possession.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.
>
> [A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.

***Commonwealth v. Parrish***, 191 A.3d 31, 36-37 (Pa. Super. 2018)

(quotation marks and citations omitted).

Here, the evidence presented at trial related to possession includes the

following: 1) Appellant was the driver and only person in the vehicle when it

was stopped; 2) Appellant stated that he frequently drives the vehicle; 3)

receipts for car maintenance were located in the vehicle and signed by

Appellant; 4) Trooper Konopka's testimony that Appellant was nervous,

defensive, and evasive during the traffic stop; 5) the presence of several air fresheners, which are commonly used by drug couriers as masking agents; 6) his travel from a source city of drugs to a drug destination; 7) his lack of luggage, clothing, or bags despite claiming he was on a business trip; and 8) the fact finder was free to disbelieve Patterson's testimony blaming her husband. Accordingly, based on the totality of the circumstances and when viewed in the light most favorable to the verdict winner, the Commonwealth set forth sufficient evidence to prove that Appellant was aware of the presence of contraband in the vehicle, and thus established constructive possession.

**Weight of the Evidence**

Finally, Appellant contends that his convictions were against the weight of the evidence because the testimony of Patterson and Trooper Konopka tended to show Patterson's deceased husband was the owner of the contraband rather than Appellant. Appellant's Brief at 27-29. Appellant also attempts to discredit portions of Trooper Konopka's testimony, claiming that Appellant acted differently from the testimony Trooper Konopka provided. *Id.* at 28-29.

Our standard of review when examining a challenge to the weight of the evidence is as follows.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same

facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) (citations and quotation marks omitted).

Patterson testified that her husband used the vehicle more than anyone else, had unexplained funds, and possessed a mechanical background. Despite this testimony, the jury determined Appellant possessed the cocaine and the drug paraphernalia, *i.e.*, the vacuum-sealed bags. The jury was free to determine the credibility of Patterson. *Jacoby*, 170 A.3d at 1078. Appellant's assertion that the evidence points to the guilt of Patterson's husband is a claim that essentially amounts to asking us to reweigh the evidence in his favor, substituting our judgment for that of the jury and the trial court. We cannot do so. *Id.* Moreover, even if the jury inferred from Patterson's testimony that her husband installed the compartment and was involved in drug trafficking, that did not preclude it from also concluding that Appellant was aware of the compartment and was involved in this specific drug trafficking. Therefore, after examining the

evidence in this case, we conclude that the trial court did not abuse its discretion in denying Appellant's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2020