J-S53022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAEKWON ALAMO | : | |
| | : | |
| Appellant | : | No. 411 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 23, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002455-2019

BEFORE:   SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.*

MEMORANDUM BY LAZARUS, J.:                **FILED DECEMBER 21, 2020**

Raekwon Alamo appeals from the judgment of sentence, entered in the
Court of Common Pleas of Philadelphia County, following the entry of an open
guilty plea to various firearm charges and related offenses.   After careful
review, we affirm.

On February 5, 2019, at 2:00 p.m., Philadelphia Police Officer Timothy
Miller of the 24th District was on routine patrol with his partner.  The officers
received a radio call from their police captain regarding an individual
possessing a gun on the 2800 block of North Swanson Street.   N.T.
Suppression Hearing, 8/19/19, at 4-5.  The armed individual was described
as a Hispanic male with braids carrying a fanny pack that contained a gun with
an extended magazine.  *Id.* at 6.  The officers responded to the call; while

_____

* Retired Senior Judge assigned to the Superior Court.

they did not initially see any individuals matching that description, Officer Miller testified that he "did one more loop around the corner" and "as [they] got to A and Somerset [Streets,] . . . which is one block east of 2800 North Swanson, [he] observed a male fitting that [description walking in the middle of] the 100 block of East Somerset." *Id.* Officer Miller testified that he "drove up alongside [the individual], rolled down [his] window, and said, "What's up?" *Id.* The male, later identified as Alamo, replied "What's up?" to the officer. *Id.* Officer Miller then stopped his police cruiser at the corner of Swanson and Somerset Streets and was in the process of exiting the vehicle when he asked Alamo if he would "[s]top for a minute." *Id.* Alamo replied, "For what? I didn't do anything wrong[,]" *id.*, and then "[a]s he's saying that, [] t[ook] off his fanny pack, thr[e]w it to the ground, [and] r[an] northbound on 2800 [Swanson]." *Id.* at 7. The officers remained in the car and proceeded to follow Alamo, ultimately discovering him hiding underneath a pickup truck in a breezeway at 2855 North Water Street. *Id.* The officers pulled Alamo out from underneath the truck and placed him into custody. *Id.* Officer Miller then radioed for backup officers to retrieve the discarded fanny pack at Swanson and Somerset Streets. *Id.* The fanny pack was retrieved; inside the bag officers recovered a gun and narcotics. *Id.* Officers also found seven-hundred and seventy-two dollars in United States currency on Alamo's person. *Id.*

Alamo was charged with possession of a firearm prohibited,[1] firearms not to be carried without a license,[2] possession of a controlled substance,[3] carrying firearms in public in Philadelphia,[4] and possession of instruments of crime (PIC).[5]  On May 13, 2019, Alamo filed a motion to suppress all physical evidence recovered during his search and arrest.  Omnibus Motion, 5/13/19, at 1.  Following a suppression hearing held on August 19, 2019, the court denied the motion.  On November 18, 2019, Alamo entered an open guilty plea to the above-stated offenses.  The court deferred sentencing, pending the completion of a presentence investigation report.  On January 23, 2020, Alamo was sentenced to 2-4 years' imprisonment for possession of a firearm prohibited; no further penalty was imposed on the remaining offenses.[6]

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

[2] 18 Pa.C.S.A. § 6106(a)(1).

[3] 35 P.S. § 780-113(a)(16).

[4] 18 Pa.C.S.A. § 6108.

[5] 18 Pa.C.S.A. § 907(a).

[6] The court's sentencing order states that as part of the plea agreement, the parties agreed to preserve Alamo's appellate rights regarding his motion to suppress.  **See** Open Guilty Plea Sentencing Order, 1/23/20; **see also** Trial Court Opinion, 2/26/20, at 2 n.1.  Generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea. **Commonwealth v. Reichle**, 589 A.2d 1140 (Pa. Super. 1991).  However, so long as the limits of the agreement are plainly set forth on the record, understood and agreed to by the parties, and approved by the trial court, there is no impediment to the offer, acceptance, performance, or enforcement

Alamo filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following issue for our consideration:

> Did not the [trial] court err in denying [Alamo's] motion to suppress physical evidence under the Fourth Amendment of the United States Constitution and Article I, Section 8, of the Pennsylvania Constitution where the police officer lacked reasonable suspicion to believe that [Alamo] was engaged in any criminal activity when he was stopped and subjected to an investigative detention based solely on information that a Hispanic male with braids carrying a fanny pack possessed a gun[?]

Appellant' Brief, at 3.

When reviewing the denial of a suppression motion, our Court must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Gray*, 896 A.2d 601, 603 (Pa. Super. 2006). "This Court may consider only the evidence of the prosecution and so much of that of the defense that remains uncontradicted when read in the context of the entire record." *Id.* at 604 (citation omitted).

Alamo asserts that he was illegally seized when Officer Miller "subjected him to an investigative detention without reasonable suspicion that he had been involved in any crime" and, therefore, any evidence uncovered from the search is the fruit of an "initial unlawful detention." Appellant's Brief, at 7-9.

---

of such plea agreements. *Commonwealth v. Parsons*, 969 A.2d 1259, 1267 (Pa. Super. 2009) (en banc) (citations omitted).

It is well-established that there are three levels of interaction between the police and members of the public:  mere encounters, investigative detentions, and custodial detentions.[7]  ***Commonwealth v. Ellis***, 662 A.2d 1043, 1047 (Pa. 1995).  The term "mere encounter" refers to non-coercive interactions with the police that do not rise to the level of a seizure of the person under the Fourth Amendment.  ***Commonwealth v. Bennett***, 604 A.3d 276, 280 (Pa. Super. 1992).  A mere encounter occurs if police simply approach a person on a public street in order to make inquiries. ***Commonwealth v. Hall***, 380 A.2d 1238, 1241 (Pa. 1977).  On the other hand, a non-custodial detention or "forcible stop" occurs when a police officer temporarily detains an individual by means of physical force or by show of authority for investigative purposes.  ***Commonwealth v. Williams***, 429 A.2d 698, 700 (Pa. Super. 1981).  In such cases, it is well-established that the police must point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably indicate that criminal activity may be afoot.  ***Terry v. Ohio***, 392 U.S. 1 (1968).

In order to determine whether an interaction was a mere encounter or a non-custodial detention, "[e]ach factual situation must be examined to determine if force was used to restrain the citizen in some way.  Such force may include 'physical force or [a] show of authority.'"  ***Williams***, 429 A.2d at

---

[7] Neither party argues that the instant interaction rose to the level of a custodial detention.  Thus, we will not analyze that level of police-citizen interaction in the instant appeal.

701. Circumstances to consider include, but are not limited to, the following: the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. ***Commonwealth v. Boswell***, 721 A.2d 336, 340 (Pa. 1998).

Immediately before Alamo fled and discarded the fanny pack, the uniformed police officers pulled their cruiser along the sidewalk where he was walking and asked him, "What's up?" After Alamo answered the officer with the same question, Officer Miller stopped his car, started to exit the vehicle and asked Alamo if he could "[s]top for a minute." Officer Miller testified that he never drew his weapon and never demanded or ordered Alamo to stop during the interaction. N.T. Suppression Hearing, 8/19/19, at 9. The suppression court found Officer Miller credible, stating "I believe the Commonwealth—this is not enough for a ***Terry*** stop. It's just the officer just wanted to speak to him." ***Id.*** at 30. ***See Commonwealth v. Camacho***, 625 A.2d 1242, 1245 (Pa. Super. 1993). ("[C]redibility at a suppression hearing is an important determination best resolved through the [suppression] court's personal observations[;] we will not reverse a suppression court's assessment of credibility absent clear and manifest error.").

Under such circumstances, we find that the instant police-citizen interaction, immediately prior to Alamo discarding the fanny pack, amounted to a mere encounter. ***Ellis***, ***supra***. Officer Miller's actions were not so

intrusive or forceful as to constitute an investigatory detention. **Bowell**, **supra**. Moreover, the fact that Officer Miller asked Alamo to "stop for a minute," as he started to exit the police cruiser,[8] did not transform the interaction from a mere encounter into a non-custodial detention. **Seer United States v. Kim**, 27 F.3d 947, 950 (3d Cir. 1994) (seizure does not occur simply because officer approaches individual and asks a few questions). Officer Miller testified that he never demanded or ordered Alamo to stop during the interaction. **Commonwealth v. Stevenson**, 832 A.2d 1123, 1127 (Pa. Super. 2003) ("The hallmark of [a mere encounter] is that it carries no official compulsion to stop or respond.") (citation omitted). **See Commonwealth v. McClease**, 750 A.2d 320, 324 (Pa. Super. 2000) ("In determining whether a 'mere encounter' has risen to the level of an 'investigative detention,' the focus of our inquiry is on whether a 'seizure' of the person has occurred.").

Accordingly, Officer Miller was not required to have any level of suspicion to conduct the interaction. Moreover, Alamo was also not required to stop or respond when he was approached by Officer Miller. **Ellis**, **supra**. As a result, Alamo's action in discarding the fanny pack as he fled the area was voluntary abandonment and not the result of unlawful police coercion. **See Commonwealth v. Riley**, 715 A.2d 1131, 1134 (Pa. Super. 1998) (contraband discarded by individual fleeing police officer are fruits of illegal

---

[8] In fact, Officer Miller had not even exited his vehicle to talk to Alamo before Alamo turned, fled and discarded the evidence.

"seizure" only where officer possessed neither "probable cause" to arrest individual nor reasonable suspicion to stop him or her; if interaction did not amount to seizure, then contraband considered abandoned property lawfully found by officer).  **See also Commonwealth v. Matos**, 672 A.2d 760 (Pa. 1996) (if pursuit by police officer not seizure, then contraband discarded by suspect considered abandoned property lawfully found by officer).  Thus, the suppression court properly admitted the fanny pack and its contents into evidence.  **Bennett**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/20